**Ignacio REYNOSO, Petitioner,**

v.

**Arthur LEONARDO, Superintendent, Great Meadow Correctional Facility, Robert Abrams, Attorney General of the State of New York, Respondents.**

**No. 89 Civ. 5116 (WK).**

United States District Court,
S.D. New York.

April 24, 1990.

On Petition for Certificate of Probable
Cause May 8, 1990.

Barry R. Ostrager, Mark B. Cunha, Simpson Thacher & Bartlett, New York City, for petitioner.

Allen M. Hecht, Asst. Dist. Atty., Bronx County, New York City, for respondents.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Petitioner Ignacio Reynoso applies for habeas corpus pursuant to 28 U.S.C. § 2254. For reasons which follow, we deny his application.

## BACKGROUND

Petitioner was convicted of manslaughter in the first degree after a jury trial before the Hon. Vincent A. Vitale in the New York State Supreme Court for the County of the Bronx. The Appellate Division, First Department, affirmed without opinion. *People v. Reynoso* (1st Dept.1987) 133 A.D.2d 1019, 519 N.Y.S.2d 989. The New York Court of Appeals affirmed with a memorandum opinion. *People v. Reynoso* (1988) 73 N.Y.2d 816, 537 N.Y.S.2d 113, 534 N.E.2d 30. Petitioner is currently serving an 8⅓ to 25 year sentence at Great Meadow Correctional Facility in Comstock, New York.

In his habeas application, petitioner contends that the trial judge made errors of state law rising to constitutional dimension by failing to charge the jury on justification, and by precluding certain evidence that he contends would have supported such a defense. New York law requires that a justification charge be given where there exists "a reasonable view of the evidence from which a jury could conclude that the defendant's acts were justified." *Blazic v. Henderson,* 900 F.2d 534, 540 (2d Cir.1990).

In determining whether that standard has been met, we must view the evidence adduced at trial in the light most favorable to petitioner. *See People v. McManus* (1986) 67 N.Y.2d 541, 549, 505 N.Y.S.2d 43, 48, 496 N.E.2d 202, 206; *People v. Steele* (1970) 26 N.Y.2d 526, 529, 311 N.Y.S.2d 889, 891–92, 260 N.E.2d 527, 528–29. Contrary to our assertion at oral argument, we must also consider the challenged evidentiary rulings. If, on evidence available to him, petitioner would have been constitutionally entitled to a justification charge, the erroneous exclusion of any such evidence could not have been a legitimate basis for depriving him of that right.

## A. *The Evidence Adduced at Trial*

The evidence relevant to the constitutional question before us was provided by: Lepido Vargas, manager of a bodega that petitioner visited moments before the incident in question; Betsy Montero, Maria Diaz and Iris Nieves, three women who were friends of Victor Soriano (the deceased) and witnessed the incident; and Jay Friedman, a police officer who arrived at the scene shortly after the incident. Their testimony established the following:

At approximately 11:30 P.M. on November 17, 1984, the deceased, Montero, Diaz and Nieves were standing in front of a bodega at 728 Courtlandt Street between 155th and 156th Streets in the South Bronx. The deceased was arguing with Montero, his girlfriend. Petitioner passed the group without incident, and made his way to a bodega further down the street to pick up some money that was owing to him. When he reached that bodega, its manager told him to come back in a few minutes. Petitioner left the bodega and again passed the deceased, who was still arguing with Montero. The deceased pointed his finger at petitioner and said in Spanish, "I want to talk to you, faggot." The deceased, who was "very angry," also demanded that petitioner stop smiling at him and keep out of his business. Petitioner said nothing and continued on his way.

After petitioner had passed, the deceased went into the bodega at 728 Courtlandt Avenue. Petitioner started back up the street to the other bodega. The deceased emerged from the 728 Courtlandt Avenue bodega when petitioner was about eight to ten feet away.

The deceased advanced toward petitioner, again telling him to stay out of his business and again declaring that he "wanted to talk" to him. Petitioner moved back, saying that he did not want to talk, and urging the deceased not to come near him. According to Diaz, the deceased then began point and to make circular motions with his hands.

Petitioner continued to retreat, but then told the deceased to "take out what you

have." The deceased gestured with his hands, moving them, either to his sides (Diaz and Nieves) or forward (Nieves) or above his shoulders (Montero), palms facing to the sky. As the deceased said either "I don't have nothing" or "Brother, I don't have—", petitioner took a handgun from his coat and fired a single, fatal shot into the deceased's abdomen. The police officer, who arrived moments later, found no weapon at or near the deceased's body.

B. *The Challenged Evidentiary Rulings*

■ There can be no doubt that the court properly precluded petitioner's sister from testifying that, several hours after the shooting, petitioner had told her that he had believed the deceased to have been armed. Clearly, the testimony was hearsay, offered for the truth of the matter asserted. Nor could the statement have been admitted as evidence of petitioner's state of mind. The state of mind exception to the hearsay rule relates only to a declarant's mental condition at the time the statement was made. Petitioner's state of mind when seeking to explain his conduct some hours after the event was wholly irrelevant.

■ Nor can we criticize the exclusion of evidence that petitioner had sustained a gunshot wound approximately three months earlier. Petitioner's discussion of this evidence suggests that the wound had been sustained in a confrontation that the jury might have considered to have been similar to the one with the deceased, and that this past experience might reasonably have increased petitioner's fear of harm. *See People v. Goetz* (1986) 68 N.Y.2d 96, 114, 506 N.Y.S.2d 18, 29, 497 N.E.2d 41, 52 (objective standard for justification defense includes evaluation of defendant's "circumstances" including his past experiences).

There is, however, no suggestion in the record that petitioner was able to offer any evidence which might have supported the characterization of similarity. As the colloquy between the court and petitioner's trial counsel makes clear, the only evidence that petitioner had been prepared to offer was a hospital record simply showing that he had a gunshot wound in the chest with no suggestion of how it had been sustained. So far as the proffered evidence showed, the wound might have been self-inflicted or sustained in some wholly accidental manner.[1] The jury could not have been asked first to speculate as to whether it had been sustained in circumstances similar to the case before it, and then to consider how that experience would have affected petitioner's view of his confrontation with the deceased.

■ Petitioner also takes issue with the trial court's exclusion of testimony concerning the dangerousness of the neighborhood in which petitioner encountered the deceased, which evidence had been offered as relevant to the reasonableness of his belief that he was in danger of being injured. We do not understand why this evidence was excluded. However, it seems to us that we may take judicial notice that the South Bronx is a dangerous neighborhood, especially late at night, and see no reason to doubt that the jurors (all of whom lived in the Bronx) were also aware of this fact. In considering the availability of a justification charge, we shall therefore assume such evidence to have been before the jury.

## DISCUSSION

Stated most strongly in petitioner's favor, the evidence (together with the just stated assumption) would have showed:

1. That, during their first confrontation, the deceased, appearing very angry, called

---

1. So far as concerns the petitioner's offer of proof, which was strictly confined to the "fact of the gunshot wound," the statement that the wound might have been self-inflicted or accidental is accurate. We were at first concerned by colloquy between court and counsel indicating that the petitioner was in fact a complaining witness in a prosecution for attempted murder arising out of the incident in which he sustained the wound. However, we could consider this circumstance only if we were to conclude that

defense counsel had been constitutionally remiss in failing to pursue this line. There is nothing in the record to support such a conclusion. On the contrary, the prosecutor's statement to the court suggests that his office's attempted murder prosecution in which petitioner was the complainant was far from being open-and-shut; and that it might be met with "a defense of justification [or] ... that it was self-inflicted."

petitioner "a faggot" and told him to stop smiling and to keep out his business;

2. That, during their second confrontation, the deceased advanced toward petitioner in an unfriendly fashion despite petitioner's obvious indications that he did not want to be approached;

3. That the confrontations took place in a dangerous neighborhood;

4. That petitioner himself at no time made an aggressive move.

██ Such evidence clearly would have justified a reasonable person in concluding that he was in for an unpleasant encounter with an aggressive stranger. However, the relevant question before us is: would such evidence have permitted a jury reasonably to conclude both that petitioner subjectively believed that deadly force was necessary under the circumstances *and* that a reasonable person in his situation would have held this belief? *Goetz,* 68 N.Y.2d at 115, 506 N.Y.S.2d at 29–30, 497 N.E.2d at 52–53. It seems to us that before that question could be answered in the affirmative there would have to have been some objective evidence to support a belief that the deceased was armed with a lethal weapon, and was contemplating its use. We find no such evidence.

Although we agree with petitioner that hand motions can be ambiguous, we note that, whatever the deceased may have been doing with his hands, all witnesses agreed that his hands were away from his body and nowhere near any weapon he might have been carrying. Petitioner points to his own demand that the deceased "take out what you have" and asks us to infer that this meant that he had seen a gun. However, this is not a necessary inference from such statement, and we find nothing in the record to justify a rational belief that it is a probable one.

We cannot end this opinion without noting the thorough, imaginative and forceful presentation of this case by Barry Ostrager, Esq., who assumed representation of petitioner at our request.

## CONCLUSION

We find the application for a writ of habeas corpus to be without merit and direct the Clerk to enter an order of dismissal.

SO ORDERED.

## ON PETITION FOR CERTIFICATE OF PROBABLE CAUSE

Having considered the standards for granting certificates of probable cause pursuant to 28 U.S.C. § 2253 and Fed.R.App.P. 22(b) ennunciated in *Alexander v. Harris* (2d Cir.1979) 595 F.2d 87 and *Dory v. Commissioner* (2d Cir.1989) 865 F.2d 44, we conclude that the instant petition presents " 'something more than a frivolous assertion even though there may be no substantial difference of opinion under 28 U.S.C. § 1292(b).' " *Alexander,* 595 F.2d at 90, *citing United States v. Reeves* (S.D.N.Y. 1965) 246 F.Supp. 599. We accordingly grant the certificate of probable cause.

SO ORDERED.