THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MIGUEL RODRIGUEZ, Appellant. — Appeal by defendant, as limited by his brief, from so much of a judgment of the Supreme Court, Queens County (Browne, J.), rendered April 29, 1982, as convicted him of manslaughter in the first degree, after a nonjury trial, and imposed sentence.

Judgment reversed, insofar as appealed from, on the facts, sentence imposed on the conviction for manslaughter in the first degree vacated and count one of the indictment dismissed.

On August 22, 1981, the defendant fired one shot from a .32 calibre handgun and killed Arvin Irizary. Prior to trial, defense counsel indicated to Criminal Term that while there was no real dispute concerning the shooting itself, the question to be decided by the court was whether or not the defendant's actions were justified under the circumstances. After the trial was concluded, Criminal Term rendered its decision rejecting the defense of justification and finding defendant guilty of manslaughter in the first degree and criminal possession of a weapon in the third degree.

Penal Law § 25.00 provides that when a defense such as justification is raised at trial, "the people have the burden of disproving such defense beyond a reasonable doubt" (*People v Reed*, 40 NY2d 204, 209). Of course, on appeal the evidence must be viewed in the light most favorable to the People (*People v Kennedy*, 47 NY2d 196). Even so viewing the evidence in the

record, we conclude that the People failed to prove beyond a reasonable doubt that the defendant knew that he could have retreated with complete safety and thus avoided the necessity of using deadly physical force.

The use of deadly physical force upon another by a defendant in a criminal case is prohibited unless the defendant "reasonably believes that such other person is using or about to use deadly physical force" (Penal Law § 35.15 [2] [a]). Even then, the defendant "may not use deadly physical force if he *knows* that he can with complete safety as to himself and others avoid the necessity of so doing by retreating" (Penal Law § 35.15 [2] [a], emphasis added).

As indicated above, the evidence before Criminal Term was, for the most part, undisputed. Prior to August 16, 1982, the defendant and the decedent, Arvin Irizary, had both been employed at a country club in Nassau County. After the decedent had accused the defendant of stealing some knives, the defendant had been fired. On August 22, 1981, the defendant went to the country club with his wife, daughter and Rosa Irizary, the estranged wife of the decedent, in order to clear up the situation concerning the stolen knives. After some discussion it was brought to light that it was Irizary, the decedent, and not the defendant, who had stolen the knives. During the discussion, Irizary abused and threatened his wife with bodily harm. As a result of the visit, the decedent was fired from his job at the club. The record reveals that the decedent's actions were witnessed by an Old Brookville police officer, who had ascertained from Mrs. Irizary that her husband was a violent man and who Criminal Term found had advised the defendant "to ignore Irizary's threats to get back at him and his family".

At about 7:30 P.M. that evening, Orlando Rodriguez, the brother of the defendant, observed Arvin Irizary drive up to his former neighborhood (he had left his wife and had not been seen there for about one month prior to the shooting), park his car, bend over and place a shiny object in his left sock. About one-half hour later when Orlando Rodriguez saw his brother, he warned him that Irizary had put what he believed was a gun in his sock. A short time later, Irizary observed defendant walking towards his building and called to him that he wanted to talk to him, apparently also cursing him. The defendant kept walking to his building and went to the front door. After the defendant *could* not gain entrance to his building, he turned and faced Irizary, who, using an obscene epithet, stated in effect, "you can't get away now. I'm going to get you". Irizary bent down and reached his right hand inside of his left pants leg; the shooting

occurred when the men were six or seven feet apart. From its decision, it appears that Criminal Term concluded that the defendant reasonably believed Irizary was about to use deadly physical force upon him, holding: "The defendant's statement and the credible evidence substantiates that there had been threats against the defendant and his family from the deceased, whose wife characterized him a a 'violent man.' Additionally, the defendant learned that the deceased was armed with a concealed weapon, which was thought to be a gun. Furthermore, the credible evidence is that the angry deceased cursed and accosted the defendant, when he initially sought to avoid the on-the-street confrontation".

Having so found, the sole question remaining for resolution was whether the proof adduced by the People established beyond a reasonable doubt that the defendant knew that he could retreat from the altercation with complete safety (CPL 70.20; *People v Doctor,* 98 AD2d 780; *People v La Susa,* 87 AD2d 578; *People v Almond,* 37 AD2d 571). The record before us is devoid of any proof that the defendant knew he could safely retreat and avoid the confrontation with Irizary. To the contrary, the record shows that (1) the defendant tried to ignore Irizary but to no avail; (2) the defendant had been threatened and abused by the decedent and knew of his violent temper and disposition; (3) the defendant knew that the decedent, prior to the evening in question, had moved from the neighborhood and had not been seen there for about a month's time; (4) the defendant had been told that Irizary had concealed a gun in his left sock (it turned out that decedent had armed himself with a 10-inch boning knife with a 6-inch blade); (5) the defendant could not enter his building and was again threatened by decedent, who reached toward his sock; and (6) the defendant and Irizary were facing each other at close range just before the gun was discharged.

In sum, the record clearly shows the defendant to have been in a perceived position of danger with his only alternative being to attempt to try to dodge or outrun a bullet from a gun which he thought the decedent had in his sock and was about to use. Because the People failed to meet their burden of proving beyond a reasonable doubt that the defendant knew he could retreat with complete safety, his manslaughter conviction cannot stand. Accordingly, the conviction for manslaughter is reversed. Lazer, J. P., Gibbons, O'Connor, Weinstein and Niehoff, JJ., concur.