■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v YVONNE SAMUELS, Appellant. [785 NYS2d 485]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Leventhal, J.), rendered June 25, 2002, convicting her of assault in the first degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, the sentence is vacated, the defendant's motion to dismiss the indictment is granted, and the indictment is dismissed, with leave to resubmit the charges to another grand jury; and it is further,

Ordered that upon service of a copy of this decision and order upon him or her, the official having custody of the defendant's person is directed to produce the defendant, forthwith, before the Supreme Court, Kings County, at which time that court shall issue a securing order pursuant to CPL 470.45, either releasing the defendant on her own recognizance or fixing bail or committing her to the custody of the New York City Department of Correctional Services pending resubmission of the case to the grand jury and the grand jury's disposition thereof (cf. CPL 210.45 [9]). Such securing order shall remain in effect until the first to occur of any of the following: (a) a statement to the court by the People that they do not intend to resubmit the case to a grand jury, (b) arraignment of the defendant upon an indictment filed as a result of resubmission of the case to a grand jury, (c) the filing with the court of a grand jury dismissal of the case following resubmission thereof, or (d) the expiration of a period of 45 days from the date of this decision and order, provided that such period may, for good cause shown, be extended by the Supreme Court, Kings County, to a designated subsequent date if such be necessary to accord the People a reasonable opportunity to resubmit the case to a grand jury.

On November 28, 1999, the defendant, Yvonne Samuels, went to the apartment of her former husband, Orville Samuels (hereinafter the complainant), to borrow $20. He opened the door and told the defendant that he had no money. The two exchanged words, and, according to the defendant's testimony before the grand jury, the complainant pushed her and grabbed her by the throat, causing her to fall to the ground at the bottom of the steps leading to the apartment. The complainant took a cup of acid from a shelf by the door where he was standing. The two then struggled over the cup until its contents spilled on both of

them, causing burns over 25% of the complainant's body and leaving him blind in one eye.

The defendant moved before trial to dismiss the indictment, inter alia, because the District Attorney failed to include in the charge to the grand jury instructions on the defense of justification. The People opposed the motion on the ground that the evidence did not support such a charge. The Supreme Court denied the motion without explanation. The defendant was subsequently convicted after a trial in which the Supreme Court provided instructions to the jury on the defense of justification.

The defendant asserts, inter alia, that the denial of her motion was error. It is worthwhile to note that her conviction does not deprive this Court of the right to review this issue (see People v Huston, 88 NY2d 400, 411 [1996]; People v Wilkins, 68 NY2d 269, 277 n 7 [1986]). The People do not argue otherwise. We agree with the defendant that her motion to dismiss the indictment should have been granted and, accordingly, reverse her conviction and dismiss the indictment with leave to resubmit the charges to another grand jury (see CPL 210.20 [4]; People v Huston, supra at 411-412; People v Sayavong, 83 NY2d 702, 712 [1994]; People v Wilkins, supra at 277).

We agree with the dissent that this case highlights an anomaly in statutory law. In fact, we agree that it is absurd to be constrained, as we are, to reverse a judgment of conviction after trial supported by legally sufficient evidence, where the petit jury rejected the justification defense, merely because the prosecutor failed to furnish the grand jury with instructions on this defense. Yet, this is the same result that the Court of Appeals reached in People v Huston (supra). There, the defendant was convicted of two counts of murder in the second degree after a jury trial. Because the prosecutor engaged in misconduct in presenting the case to the grand jury that indicted the defendant for these crimes, however, the court reversed the conviction upon a finding that the integrity of the grand jury had been impaired creating a risk of prejudice to the defendant (see CPL 210.35 [5]; People v Huston, supra at 411-412; People v Sayavong, supra at 711).

The dissent recognizes in the case at bar that, while the Legislature amended the Criminal Procedure Law to eliminate a similar anomaly of dismissals after trial where the evidence before the grand jury had been legally insufficient (see CPL 210.30 [6]), it failed to take action where the error was a failure to instruct the grand jury on a complete defense later rejected by the trial jury. This very observation was also made by Chief Judge Kaye writing the opinion in People v Huston (supra at 411). We are not legislators, and we leave to that branch of

government and to the Governor the prerogative of amending the Criminal Procedure Law to eliminate the anomaly or absurdity of the result here and in *People v Huston (supra)*. We cannot do it.

The District Attorney is required to instruct the grand jury on the law with respect to matters before it (*see* CPL 190.25 [6]). If the District Attorney fails to instruct the grand jury on a defense that would eliminate a needless or unfounded prosecution, the proceeding is defective, mandating dismissal of the indictment (*see* CPL 210.35 [5]; *People v Valles*, 62 NY2d 36, 38 [1984]; *People v Calbud, Inc.*, 49 NY2d 389, 395-396 [1980]). Where the evidence before the grand jury supports it, the charge on justification must be given (*cf. People v Mitchell*, 82 NY2d 509, 514-515 [1993]; *People v Lancaster*, 69 NY2d 20, 27-28 [1986], *cert denied* 480 US 922 [1987]; *People v Torres*, 252 AD2d 60, 65 [1999]).

In determining whether the evidence supports a justification defense, the record must be viewed in the light most favorable to the defendant (*cf. People v Padgett*, 60 NY2d 142, 144-145 [1983]). Here, the People argue that no reasonable view of the evidence before the grand jury supported such a defense. They suggest that the defendant had no reasonable belief that she faced the imminent use of deadly physical force and that she could have retreated in complete safety. This argument fails to interpret the grand jury testimony in a light most favorable to the defendant. The dissent, in arguing that the defendant's grand jury testimony would not support a finding that she reasonably believed the complainant was threatening her with deadly physical force but only established that "the spilling of the acid was an accidental byproduct of an argument that became mutually physical," likewise fails to interpret this testimony in a light most favorable to the defendant. So viewed, the defendant's testimony established that she knew that the complainant kept cleaning supplies on the shelf by the door, that he took the cup of acid from the shelf while she was on the ground after he pushed her and grabbed her throat, that she was afraid of the complainant because he was always abusing her, and that they struggled for the cup which spilled and burned both of them. Furthermore, the evidence did not establish that the defendant knew that she could in complete safety retreat back up the stairs from the complainant's front door (*see* Penal Law § 35.15 [2] [a]; *People v Light*, 170 AD2d 461, 462-463 [1991]; *People v Rodriguez*, 111 AD2d 879, 881 [1985]). Paradoxically, the Supreme Court denied the defendant's motion to dismiss the indictment for failure to give a justification charge, yet, it charged the trial jury on the justification defense.

Accordingly, the evidence before the grand jury required the District Attorney to give a charge on justification, and the fail-

ure to do so impaired the integrity of that body to such a degree that the defendant may have been prejudiced by an unwarranted prosecution (*see* CPL 210.35 [5]; *People v Caracciola*, 78 NY2d 1021, 1022 [1991]; *People v Batashure*, 75 NY2d 306, 311-312 [1990]; *People v Valles, supra; People v Calbud, Inc., supra*). Therefore, the Supreme Court erred in denying the defendant's motion to dismiss the indictment on this ground.

The dissent would forgive this error because the defense counsel, who actively represented the defendant when she appeared in the grand jury, made no request that the grand jury be instructed on justification. The dissent quotes the concurring opinion of Chief Judge Kaye (then Judge Kaye), in *People v Valles* (*supra* at 41), to the effect that the absence of a request to instruct the grand jury on the affirmative defense of extreme emotional disturbance from an actively-involved defense attorney should not be ignored. First, the context of this quote, a makeweight observation because the evidence did not support the defense, suggests that counsel made a strategic choice to avoid blunting the justification charge which was given in *Valles*. Second, the dissent has no assurance that the defense counsel at bar did not request that the grand jury be instructed on justification. All we can know is what happened on the record before the grand jury. If defense counsel made this request outside the presence of the grand jury—as should have been the case (*see* CPL 190.52 [2]), orally or in writing, it would not be reflected in the grand jury minutes. And, it is no wonder that the record is undeveloped on this point because the prosecutor never raised this argument now being constructed for the first time on appeal by the dissent. Third, while the defense attorney may be present with the defendant-witness in the grand jury room and may advise his or her client, the lawyer "may not otherwise take *any* part in the proceeding" (CPL 190.52 [2] [emphasis added]). Certainly, Judge Kaye was aware of this tight restriction when she concurred in *People v Valles* and observed that "defense counsel in this situation cannot be held to the same requirement of precision in making requests as exists in the trial context." (*People v Valles*, 62 NY2d at 41.)

The defendant's remaining contentions are without merit. Goldstein, Crane and Cozier, JJ., concur.

Ritter, J.P., dissents and votes to affirm the judgment appealed from, with the following memorandum in which Spolzino, J., concurs.

Because I cannot agree that the facts of this case warrant the exceptional remedy of dismissal of the indictment, I respectfully dissent. I believe that the defendant's testimony before the grand jury did not require a charge explaining justification for the use of deadly physical force.

Initially, this case highlights an anomaly in state law. In 1967, the Law Revision Commission (hereinafter the Commission) recommended that the Criminal Procedure Law be amended to permit a conviction to stand provided that it was based upon legally sufficient evidence produced during trial notwithstanding the fact that the evidence before the grand jury was not legally sufficient. This exception is now codified in CPL 210.30 (6). When enacted, the new statute effected an "important change" in New York law, which had previously required reversal and dismissal of the indictment under such circumstances (*People v Jackson*, 18 NY2d 516 [1966]; Temp Commn Staff Comment, Proposed NY CPL 110.30, at 186 [Thompson Co. 1967]). The Commission, characterizing the old rule as "[o]ne of the most widely criticized principles of New York Law," noted that the requirement was regarded by many as "shocking" (Temp Commn Staff Comment, Proposed NY CPL 110.30, at 186 [Thompson Co. 1967]). However, no comparable amendment was recommended when the claimed error was the failure to instruct the grand jury on a defense later considered and rejected by the trial jury. Thus, in the later instance, the failure to charge the grand jury on a defense required dismissal of the indictment even in instances where a trial jury had rejected the same defense and the conviction was founded upon legally sufficient evidence. I discern no rational basis for distinguishing between the two. Indeed, this appeal drives home the anomaly.

At trial, the defendant testified, as she did before the grand jury, that she was a battered woman at the hands of the complainant. In addition, she presented corroborating witnesses and expert opinion evidence to that effect and the trial jury was instructed on the defense of justification. Despite this evidence and the higher burden of proof on the People at trial, the defendant was convicted. To now reverse this otherwise valid conviction, dismiss the underlying indictment, and compel the People to re-present charges to a new grand jury arising from an incident now almost five years old, would result in a tremendous waste of resources without any cognizable counterbalancing benefit. The identified goal of the grand jury is to protect citizens against unfounded and arbitrary accusations and prosecutions (*see infra*). Here, given the unimpeached verdict after trial, it cannot reasonably be argued that the prosecution was unfounded or arbitrary.

In any event, I believe that a careful and thorough review of the evidence before the grand jury reveals that a justification charge as to the use of deadly physical force was not required.

Proceedings before the grand jury are codified in CPL article 190. Other than various "automatic grounds" not here impli-

cated, dismissal of an indictment as defective is not warranted unless the grand jury proceeding "fails to conform to the requirements of article one hundred ninety to such degree that the integrity thereof is impaired and prejudice to the defendant may result" (CPL 210.35 [5]). Here, the proceedings before the grand jury conformed to the literal requirements of CPL article 190, but, even if they did not, dismissal of the indictment is not warranted because the integrity of the grand jury was not impaired thereby.

As legal advisor to the grand jury, the District Attorney is charged with instructing the grand jury "concerning the law with respect to its duties or any matter before it" (CPL 190.25 [6]). This includes a duty to instruct on a complete defense supported by a reasonable view of the evidence that has the "potential [to eliminate] a needless or unfounded prosecution" (*People v Valles*, 62 NY2d 36, 38 [1984]; *see also People v Mitchell*, 82 NY2d 509, 514 [1993]; *People v Lancaster*, 69 NY2d 20, 26 [1986], *cert denied* 480 US 922 [1987]). Here, the defendant argues that the District Attorney erred in failing to instruct the grand jury on the complete defense of justification for the use of deadly force.

Penal Law § 35.15 (2) provides that an actor may use deadly physical force upon another if (1) the actor reasonably believes that such deadly physical force is necessary to defend against what the actor reasonably believes to be the use or imminent use of deadly physical force, and such beliefs are objectively reasonable, (2) the actor did not provoke the conduct of the other and was not the initial aggressor, and (3) the actor cannot avoid the use of such force in complete safety to himself or herself and others by retreating (*see People v Berk*, 88 NY2d 257 [1996], *cert denied* 519 US 859 [1996]; *Matter of Y.K.*, 87 NY2d 430 [1996]; *People v Goetz*, 68 NY2d 96 [1986]; *People v McGhee*, 4 AD3d 485 [2004], *lv denied* 2 NY3d 803 [2004]). Deadly physical force is "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [11]).

Here, according to the grand jury testimony of the complainant, the defendant, his former wife, arrived at his basement apartment unannounced and asked to come in. When he refused, she asked for money to take the bus home. The complainant stated that he offered bus fare, which he retrieved from his bedroom, and the defendant asked if he had some ice for her drink. When he said no and began to close the door, she threw a cup of "some kind of acid" at him, causing very serious burns to his face, chest, and leg. (At trial, it was revealed that the liquid was a level two acid, the second strongest on a scale of one to thirteen.) The complainant denied that he argued with

the defendant prior to the incident, or that he had any chemicals other than ammonia and "cleaning stuff" in his apartment.

The defendant told a much different story. She claimed that she arrived at the complainant's apartment after he promised her $20 for a Metrocard. When she asked for the money, the complainant told her that he didn't have it and started pushing her in the chest. The defendant testified that she "tried to put [her] foot down to go in," but the complainant continued to push her and yell at her to go away. Further, she asserted, the defendant grabbed her by the throat, causing her to fall. Her testimony continued:

"I got up after, and I still said, 'Why did you let me come if you didn't have it? You should have let me know. He said, I don't have it. And if you don't leave, I'm gonna throw this at you.'

"Then he raise his hand and hold on to—it was either green or blue container. He said, 'If you don't leave, I will throw it you.'

"I grab it, and we was struggling. And the thing—I think the cover flew off, and it just spilled, you know, while we struggling.

"And I went like that with my hand [striking the container with the back of her hand], and it got on me and him as well."

(A photograph of the complainant taken at the hospital shows his entire face and neck burned black, and splatter and drip-like burns covering almost all of his torso and right arm). Asked to elaborate on the struggle, the defendant stated:

"He was holding [the container] in [both] his hands. And he said to me, 'If you don't move, if you don't leave, I'm gonna throw this at you.'

"I grab onto the cup with my hands, and we both was struggling for it."

The defendant asserted that "the liquid starting spilling when we start struggling." When asked what was in the container, the defendant stated, "I haven't got a clue. I don't know. But I know it was burning." When she was arrested at the hospital, she testified that she told police, "Why you arresting me? I didn't do nothing. We both were fighting. Why hasn't he been arrested as well?" The defendant denied that she told a police officer that there was acid in the container, asserting, "I could have never said that" because, "[u]ntil now, I don't know what it is, sir." In answer to questions posed by the grand jury, the defendant stated that the complainant took the container from a shelf next to the front door where he stored "a lot of chemicals and stuff" that he obtained from a former job as a buildings and grounds person. She asserted that some of the items were "strong" and that, when she used them, she sometimes had to

leave the house for hours. Further, that the complainant stated that some "could knock you out." However, when asked if the complainant ever warned her "not to touch" the chemicals, she stated, "No, he use it. We use it." At the further request of the grand jury, the defendant was also asked why she did not leave when first refused money and whether she feared the complainant during the incident. The defendant testified that she did not leave because, "I have asked him before, and he said he don't have money. And, you know, I tell him it's important." Concerning her fear of the complainant, she stated that, although she loved the complainant and still sometimes stayed at his apartment, she always had fear of him due to his long-standing abuse and threats. However, when pressed specifically whether there were "any additional reasons for the evening that this happened and the circumstances of the evening" that caused her to be in fear, she stated: "No, because when I went there, I didn't go there thinking he was gonna be upset or want to fight or whatever, because all I went for was the money."

Police Officer Richard Mack told the grand jury that he responded to the scene and observed paint bubbling off of the complainant's door. When he went to the hospital, he encountered the defendant, who told him that the complainant "tried to pour acid on me and I defended myself." Further, she stated that she had been burned by the acid. However, Officer Mack did not observe any injuries to the defendant, nor was she being treated by any doctors. By contrast, the complainant had readily observable severe burns on much of his body and was receiving emergency care from a number of doctors.

I believe that the defendant's testimony before the grand jury was that the spilling of the acid was an accidental by-product of an argument that became mutually physical, not that she was justified in the intentional use of deadly physical force (*see e.g. People v McGhee*, 4 AD3d 485, *supra* [2004]; *People v Workman*, 277 AD2d 1029 [2000]; *People v Hosein*, 221 AD2d 563 [1995]; *People v Quiles*, 172 AD2d 859 [1991]; *People v Thebner*, 168 AD2d 653 [1990]). Indeed, although questions posed by the grand jury were clearly designed to probe the defendant's mental state, the defendant denied knowledge as to the content of the container prior to it being spilled, or any particularized fear of the complainant arising from his alleged brandishing of the container or any other conduct on the night in question. Accordingly, although the defendant's testimony was sufficient to support a conclusion that she neither provoked the complainant's alleged conduct nor was the initial aggressor, her testimony did not support a finding that she reasonably believed that the complainant was threatening the imminent use of

deadly physical force against her and that she needed to use deadly physical force to thwart the same. By contrast, the complainant's alleged threat concerning the container was, by its terms, conditional, and the defendant did not testify that she believed it to be otherwise. Indeed, again, in response to questions posed by the grand jury probing why the defendant remained at the complainant's apartment after being told repeatedly to leave and, by her testimony, being threatened, pushed, and grabbed by the throat, the defendant did not testify that she was unable to retreat in safety. (The majority does not address this gap in the defendant's testimony.) Rather, her testimony reveals that she intentionally remained and even attempted to enter the apartment based on her belief and insistence that she should be paid the money she was promised. In sum, the defendant's account, if believed, was consistent with accident, not the intentional use of deadly physical force in self defense.

Similarly, the testimony of Officer Mack, which included the defendant's alleged statement to him at the hospital, to the extent that it contradicted the defendant's grand jury testimony, was also insufficient to create a reasonable view of the evidence warranting a justification charge (*see People v Watts*, 57 NY2d 299 [1982]). The officer's account of what the defendant said did not, for example, establish that she was not the initial aggressor or that she did not provoke the alleged conduct, or that her safe retreat was not possible. Further, not only were the missing elements not provided by other evidence before the grand jury, but also, the defendant expressly denied telling Officer Mack that the complainant tried to pour acid on her or that she even knew what was in the container.

Finally, although the defense counsel was present with the defendant during the questioning before the grand jury and was active in representing her, he made no request that the grand jury be instructed on justification. Indeed, several attempts by the District Attorney to limit the defendant's testimony resulted in objections from the defense counsel and conferences outside the presence of the grand jury. In an analogous context of claimed error arising from the failure of the District Attorney to instruct the grand jury on a defense, Chief Judge Kaye (then Judge Kaye), noted in a concurring opinion, "[w]hile defense counsel in this situation cannot be held to the same requirement of precision in making requests [to charge] as exists in the trial context, the courts should not ignore the absence of an actual request for such instruction by a defense attorney actively involved in the grand jury presentation" (*People v Valles*, 62 NY2d 36, 41, *supra* [1984]). So too here. It would elevate form

over substance to permit defense counsel to remain silent when representing his client in the grand jury only to be permitted to claim that the defendant was disadvantaged by an unrequested justification instruction after a subsequent trial results in a conviction.

In sum, I believe that no reasonable view of the evidence before the grand jury supported an instruction on the defense of justification for the use of deadly physical force. Thus, I would find that the failure to provide such an instruction did not result in a failure to conform to the requirements of article 190 of the CPL.

Finally, even if a reasonable view of the evidence before the grand jury did support an instruction on the defense of justification, I do not believe that the failure to provide such an instruction, on the facts presented, requires dismissal of the indictment.

The failure to adequately and completely instruct the grand jury is not one of the statutorily enumerated instances in which dismissal of an indictment is "automatic" (CPL 210.35 [1]-[4]). Rather, such a failure falls within the catch-all provision of CPL 210.35 (5), which provides that an indictment is defective when the grand jury proceeding "otherwise fails to conform to the requirements of article one hundred ninety *to such degree that the integrity thereof is impaired and prejudice to the defendant may result*" (emphasis added). This subsection is the "statutory equivalent of the common-law principle that an indictment issued by a legally constituted Grand Jury need not be dismissed because of a simple technical error if the accused was not prejudiced or the fundamental integrity of the process impaired" (*People v Williams*, 73 NY2d 84, 90 [1989]). Thus, although there is no harmless error review for claimed defects before the grand jury when reviewed after trial (*see People v Wilkins*, 68 NY2d 269, 277, n 7 [1986]), dismissal pursuant to CPL 210.35 (5) requires a discretionary determination that the fundamental integrity of the grand jury process was impaired by the error. The Court of Appeals has observed that this section establishes a "high test" to qualify for the "exceptional remedy" of dismissal of an indictment (*see People v Darby*, 75 NY2d 449, 455 [1990]). "The statutory test is very precise and very high: [it requires] 'impairment of integrity' of the grand jury process" (*id.* at 455). Thus, "not every improper comment, elicitation of inadmissible testimony, impermissible question or mere mistake renders an indictment defective" (*People v Huston*, 88 NY2d 400, 409 [1996]). Rather, dismissal is limited "to those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the grand jury" (*id.* at 409). "[M]ere flaw, error or skewing" is not enough (*People v Darby, supra* at 455). Here, I do not believe that this high test was met.

The grand jury need not be instructed with the same degree

of precision that is required when a trial jury is instructed on the law (*see People v Valles*, 62 NY2d 36, 38, *supra* [1984]; *People v Calbud, Inc.*, 49 NY2d 389, 394 [1980]). Unlike the charge to a trial jury, it is enough to simply read the grand jury the appropriate sections of the Penal Law (*see People v Calbud, Inc., supra* at 395, n 1). Instructions are sufficient if "the District Attorney provides the Grand Jury with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime" (*People v Calbud, Inc., supra* at 394-395; *see People v Valles, supra* at 38). Not every failure to instruct the grand jury as to a defense of justification renders an indictment defective (*see People v Huston*, 88 NY2d 400, 409, *supra* [1996]; *People v Lancaster*, 69 NY2d 20, 27, *supra* [1986]; *People v Mitchell*, 82 NY2d 509, 514, *supra* [1993]). Rather, an indictment is only defective when instructions are "so incomplete or misleading as to substantially undermine [the] essential function" of the grand jury to act as a buffer between the State and its citizens, and protecting the latter from unfounded and arbitrary accusations (*People v Calbud, Inc., supra* at 396; *see People v Caracciola*, 78 NY2d 1021, 1022 [1991]). Here, the defendant's testimony before the grand jury did not present a classic scenario of justification. That is, she did not testify that she intentionally engaged in conduct that would have been illegal but for the life-threatening circumstances in which it occurred. Rather, the divergence between the defendant's and the complainant's testimony raised issues of credibility. Indeed, given the questions posed by the grand jury, this was clearly the focus of their attention. This focus was also reflected in the District Attorney's instructions to the grand jury, which included a detailed charge on credibility. Further, the defendant was afforded the opportunity to testify as to the facts relevant to such a defense, such as her allegations of prior abuse and fear of the complainant. Thus, not only did the grand jury have all the relevant facts before it, but also, the application of the defense of justification to the testimony presented was apparent from the exercise of common sense and experience. If the defendant's account of the events was believed, she had no criminal intent, a conclusion the grand jury was permitted to draw without separate instruction. Accordingly, the District Attorney's failure to provide the grand jury with a separate instruction on the defense of justification did not render the instructions "so incomplete or misleading as to substantially undermine [the] essential function" of the grand jury (*People v Calbud, Inc., supra* at 396). Rather, the grand jury was provided with enough information to enable it intelligently to decide whether a crime was committed and whether there existed

legally sufficient evidence to establish the material elements of the crimes charged. In sum, on the facts presented, I believe that the failure to instruct the grand jury on the defense of justification for the use of deadly physical force did not impair the integrity of the grand jury and the "exceptional remedy" of dismissal of the indictment is not warranted.