[948 NYS2d 351]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SIDNEY WISDOM, Appellant.

Second Department, July 11, 2012

**APPEARANCES OF COUNSEL**

*Lynn W. L. Fahey*, New York City (*De Nice Powell* of counsel), for appellant.

*Charles J. Hynes, District Attorney*, Brooklyn (*Leonard Joblove* and *Ann Bordley* of counsel), for respondent.

**OPINION OF THE COURT**

BALKIN, J.

This case concerns the elemental rule that witnesses be sworn before testifying and whether violation of that rule in the grand jury renders the proceeding so defective that the "integrity thereof is impaired and prejudice to the defendant may result" (CPL 210.35 [5]). This case also concerns the defendant's assertion that the People violated his right to a speedy trial under CPL 30.30.

## I

On January 31, 1996, in the Prospect Heights neighborhood of Brooklyn, the defendant shot Amy Donaldson three times in the chest and partially strangled her four-year-old granddaughter. A few weeks later, after a felony complaint was filed and an arrest warrant was issued, the defendant was arrested in Baltimore, Maryland, where he was being held on unrelated charges, but he was not then returned to New York.

On March 26, 1996, prior to the grand jury presentation, the Supreme Court adjudged Donaldson, who was unable to appear in the grand jury, a "[s]pecial witness" (CPL 190.32 [1] [b] [i]). On March 28, 1996, pursuant to that order, a videotaped examination of Donaldson was conducted (*see* CPL 190.32 [4]). In violation, however, of mandated procedure (*see* CPL 60.20 [2]; 190.30 [1]; 190.32 [5] [e]), Donaldson was not sworn before she testified. A few days later, when the videotaped examination was presented to the grand jury, the People discerned the defect. On April 11, 1996, they obtained an order authorizing another videotaped examination. On April 12, 1996, 15 days after Donaldson's first videotaped examination, a second videotaped examination was conducted.

As revealed in the second videotaped examination, the prosecutor asked Donaldson if she remembered giving a statement "the last time I was here." Donaldson answered, "Yes." Donaldson was then sworn, and the prosecutor asked, "[t]he statement you previously gave is the truth?" Donaldson answered, "Yes." The prosecutor asked, "[d]o you swear to that?" and Donaldson answered, "I swear to that." The prosecutor thanked Donaldson and the examination ended without any further inquiry or reference to the content of the first examination.

The second examination was presented to the grand jury on April 19, 1996. Other than Donaldson's videotaped examinations, no evidence inculpating the defendant was received in the grand jury. The grand jury returned an indictment charging the defendant with numerous crimes relating to the attacks on Donaldson and her granddaughter, including, among others, attempted murder in the second degree (two counts), assault in the first degree, and burglary in the first degree.

A year later, in April 1997, the defendant was returned to New York and was arraigned on the indictment. He filed omnibus motions, and, in their June 12, 1997 response, the People asserted that the defendant had been arrested in this case on February 25, 1996, in Baltimore based on information provided by Donaldson, among others. Pursuant to the defendant's request, the Supreme Court examined the grand jury minutes. In an order dated July 24, 1997, the Supreme Court found that the "competent evidence" in the grand jury was legally sufficient and that, with one exception, the grand jury had been correctly instructed on the law.[1] The Supreme Court also denied the defendant's request that he be permitted to examine the grand jury minutes.

A suppression hearing was scheduled for September 18, 1997, and the trial was scheduled to commence on September 19, 1997. On September 18, 1997, the defendant filed and served a motion, returnable the same day, to dismiss the indictment pursuant to CPL 30.30. The defendant noted in his motion that he had been arrested in Baltimore, Maryland, based on a warrant issued in Brooklyn on or about February 25, 1996. He was not returned to New York, however, until February 1997. Moreover, he alleged, the People did not make any "reasonable or dili-

---

1. The Supreme Court dismissed one count of assault in the first degree based on an error in the instructions given to the grand jury.

gent'' efforts to bring him to trial in New York. The defendant asserted that more than 400 days of delay were chargeable to the People, and that his right to a speedy trial under the Constitution and CPL 30.30 had been violated. In court that day, the prosecutor protested the short notice and asserted that the defendant had been given the paperwork on which he based the motion two weeks earlier. Defense counsel did not contradict the prosecutor's assertion as to when he had received that paperwork. During the ensuing oral argument as to the merits of the motion, the prosecutor asserted several times that the short notice allowed her inadequate time to prepare fully, but asserted that the People had done all that was required of them to establish their diligence in having the defendant returned from Maryland. The Supreme Court denied the motion, on the merits, and the case proceeded to hearing and trial.

Following the close of the People's case, the defendant moved, among other things, to dismiss the indictment based on the People's failure to administer the testimonial oath to Donaldson before her videotaped examination in March 1996. Defense counsel claimed that he could not have made the motion as part of his timely pretrial omnibus motion because he did not have the grand jury minutes at that time. The Supreme Court denied the motion to dismiss.

The jury convicted the defendant of attempted murder in the second degree (two counts), burglary in the first degree, and endangering the welfare of a child, and he was sentenced on October 30, 1997, to lengthy prison terms. On appeal, the defendant raises numerous contentions, but we need address only two of them.

## II

First, the defendant contends that the Supreme Court erred by denying his motion to dismiss the indictment pursuant to CPL 30.30. The People contend as a threshold matter that the defendant waived his speedy trial claim by not giving them "reasonable notice" of the motion, as required by statute (see CPL 210.20 [1], [2]; 210.45 [1]). The defendant counters that the People waived any objection to the lack of reasonable notice at the oral argument on the motion by addressing the merits of the motion.

At the outset of the argument on the defendant's speedy trial motion, the prosecutor pointed out that the defendant had been given the paperwork on which he based his speedy trial

motion two weeks earlier. Defense counsel himself admitted that he had not reviewed the papers until the previous night. Later in the discussion, the prosecutor noted that she did not have copies of documents in evidentiary form to present to the court because she did not know that the defendant intended to make a CPL 30.30 motion. Under these circumstances, we find that the People did not waive their right to "reasonable notice" of the motion (*People v Cook*, 193 AD2d 366, 369 [1993]).

Whether notice of a motion to dismiss an indictment under CPL 30.30 is "reasonable" depends, in part, on the circumstances. Sometimes those circumstances prevent the defendant from making the motion until the very last minute before trial; short notice is not necessarily unreasonable notice.

The nature of CPL 30.30 is relevant in the determination of what is reasonable notice. It must be remembered that, although CPL 30.30 is entitled "Speedy trial; time limitations," it is less a pure "speedy trial" provision (*cf. People v Romeo*, 12 NY3d 51, 55 [2009], *cert denied* 558 US —, 130 S Ct 63 [2009]) than a "counting statute" addressed to delays chargeable to the People (*see People v Farkas*, 16 NY3d 190, 193 [2011]; *People v Cortes*, 80 NY2d 201, 208 [1992]). The defendant's initial substantive burden in seeking dismissal under CPL 30.30 is not onerous. The defendant need only allege that the People failed to declare their readiness for trial within the applicable time period (*see People v Goode*, 87 NY2d 1045, 1047 [1996]; *People v Luperon*, 85 NY2d 71, 77-78 [1995]). The People then have the burden of identifying the various statutory provisions sufficient to exclude enough days from the total period of delay so that the time chargeable to them does not exceed the limit (*see People v Luperon*, 85 NY2d at 77-78).

 This action was commenced in February 1996 with the filing of the felony complaint (*see* CPL 1.20 [17]; 100.05 [5]; *People v Carter*, 91 NY2d 795, 798 [1998]). Upon motion, the defendant would have been entitled to dismissal under CPL 30.30 if more than six calendar months—here, 182 days (*see People v Cortes*, 80 NY2d at 208 n 3)—of delay was chargeable to the People (*see* CPL 30.30 [1] [a]; *People v Cortes*, 80 NY2d at 208). The defendant was not arraigned on the indictment until April 1997, more than 400 days after the action was commenced, and the People announced that they were ready for trial in July 1997. It was clear, well before the defendant made his speedy trial motion, that a CPL 30.30 motion might be warranted, and no later than two weeks before trial defense counsel possessed information

that he deemed sufficient to justify making the motion.[2] That does not mean that he was required to make the motion immediately upon receiving that information—the statute requires only that the motion be made before trial—but it does mean that his motion the day before trial was scheduled to begin, returnable the same day, was not made upon "reasonable notice" to the People (*see People v Rivera*, 270 AD2d 365 [2000]; *People v Goberdhan*, 249 AD2d 324 [1998]; *People v Williams*, 233 AD2d 536 [1996]; *People v Weaver*, 162 AD2d 486, 487 [1990]). By failing to provide the People with reasonable notice of his motion to dismiss the indictment under CPL 30.30, the defendant waived his claim (*see People v Williams*, 233 AD2d at 536; *People v Baxter*, 216 AD2d 931 [1995]; *People v Hunyadi*, 96 AD2d 647, 648 [1983]; *cf. People v Lawrence*, 64 NY2d 200, 203 [1984]).

### III

Next, the defendant contends that the Supreme Court erred in denying his motion to dismiss the indictment based on a defect in the grand jury proceedings. Specifically, he contends that the prosecutor's failure to administer the testimonial oath to Donaldson before her first videotaped examination impaired the integrity of the grand jury proceeding and created a potential for prejudice (*see* CPL 210.20 [1] [c]; 210.35 [5]). Further, he contends that the prosecutor's attempt to cure the error by having Donaldson swear two weeks later to the truth of her earlier testimony was insufficient to cure the error.

■ Initially, we find that, contrary to the People's contention, the defendant properly preserved this claim for appellate review. Further, the defendant established "good cause" for his failure to raise the issue in his timely pretrial omnibus motions, given that he did not have the grand jury minutes until after he had made his omnibus motions (*see* CPL 255.20 [3]; *cf. People v Lindsey*, 74 AD3d 988, 988 [2010]; *People v Stamen*, 163 AD2d 499, 499 [1990]). Moreover, as the defendant correctly contends, his conviction on legally sufficient trial evidence does not preclude review of this claim on appeal (*see People v Huston*, 88 NY2d 400, 411 [1996]; *People v Calkins*, 85 AD3d 1676, 1677 [2011]; *People v Connolly*, 63 AD3d 1703, 1704-1705 [2009]; *People v Samuels*, 12 AD3d 695, 697-698 [2004]; *People v Miller*, 295 AD2d 746, 747 [2002]).

---

2. That the possibility of a CPL 30.30 motion was present significantly earlier did not mean that the defendant should have made it before he received the documents that made him confident that the motion was warranted.

Pursuant to CPL 210.35 (5), dismissal of an indictment is appropriate where the grand jury proceeding fails "to conform to the requirements of [CPL article 190] to such degree that the integrity thereof is impaired and prejudice to the defendant may result" (*see* CPL 210.20 [1] [c]; *People v Thompson*, 81 AD3d 670, 671 [2011], *lv granted* 18 NY3d 998 [2012]). Dismissal on these grounds is an "exceptional remedy" that "should . . . be limited to those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the Grand Jury" (*People v Huston*, 88 NY2d at 409; *see People v Thompson*, 81 AD3d at 671; *People v Ramirez*, 298 AD2d 413 [2002]). Thus, it is the result of the grand jury proceeding—not of the entire criminal proceeding—that is relevant in determining whether "prejudice . . . may result" (*People v Huston*, 88 NY2d at 409 [internal quotation marks omitted]; *see People v Hill*, 5 NY3d 772, 773 [2005]; *People v Caracciola*, 78 NY2d 1021, 1022 [1991]; *People v Read*, 71 AD3d 1167, 1168 [2010]; *People v Moffitt*, 20 AD3d 687, 688-689 [2005]; *People v Samuels*, 12 AD3d at 698). "Typically, the submission of some inadmissible evidence will be deemed fatal only when the remaining evidence is insufficient to sustain the indictment" (*People v Huston*, 88 NY2d at 409; *see People v Thompson*, 81 AD3d at 671).

The Criminal Procedure Law requires that, except in limited circumstances, "[e]very witness more than nine years old may testify only under oath" (CPL 60.20 [2]). The rules of evidence governing criminal proceedings set forth in CPL article 60 are, where appropriate, applicable to grand jury proceedings, except as otherwise provided in CPL 190.30 (*see* CPL 190.30 [1]). CPL 190.30 (1) does not contain an exception to the requirement that evidence be sworn.

The requirement that testimony be sworn is important. Indeed, the Third Department has said, in dictum, that "the failure to administer the statutorily required oath or affirmation to a witness in a criminal trial, absent a valid waiver, requires the resulting conviction be set aside without regard to any prejudice suffered by a defendant" (*People v Hoffler*, 53 AD3d 116, 122-123, citing *People v Copeland*, 70 AD2d 884, 885 [1979]).[3] We need not go that far here, but we agree that the requirement that witnesses be sworn is important because it

---

**3.** Some commentators have criticized the requirement of an oath (*see* 6 Wigmore, Evidence § 1827 [Chadbourne rev 1976], cited in *Matter of Brown v Ristich*, 36 NY2d 183, 189 [1975]).

advances the bedrock goal that testimony be truthful. It does so in two ways. First, it alerts the witness to the moral duty to testify truthfully. Second, it seeks to discourage false testimony by establishing a legal basis for a perjury prosecution (*see People v Parks*, 41 NY2d 36, 45 [1976]; *People v Copeland*, 70 AD2d at 885). The oath is effective to promote truthful testimony only if the oath is administered before the witness testifies.

■ In light of the failure to administer the oath to Donaldson before she testified, the grand jury proceeding "fail[ed] to conform to the requirements of article one hundred ninety" (CPL 210.35 [5]). Moreover, the extent of the deviation from those requirements was so great that dismissal is required (*see People v Barabash*, 18 AD3d 474, 474-475 [2005]; *People v Vasquez*, 119 Misc 2d 896, 897-898 [1983]; *see generally People v Huston*, 88 NY2d at 409; *cf. People v Arbas*, 85 AD3d 1320, 1321 [2011]; *People v Thompson*, 81 AD3d at 671). No evidence in the grand jury, other than in Donaldson's videotaped examinations, inculpated the defendant.

The People argue that the error was cured by Donaldson's second examination. We find this argument unconvincing. Donaldson had been shot in the chest three times. She was unable to appear in the grand jury. Her second examination was conducted more than two weeks after the first, and it consisted only of her statement, now under oath, that her first statement was the truth. The content of the first examination was not restated, either by Donaldson or by the prosecutor. The testimonial oath is intended to influence the witness while the witness is testifying, in each answer. The belated oath to Donaldson did not serve that purpose, given the failure to restate the content of her first examination. Indeed, the second examination created only a dubious basis for a perjury prosecution if Donaldson's first statement had not been truthful.

A finding here that the prosecutor's failure to administer the oath to Donaldson was inconsequential would be tantamount to a conclusion that the testimonial oath is merely an empty exercise. Instead, we conclude that the error was a significant violation of the requirements of CPL article 190, and that, under the circumstances, it impaired the integrity of the grand jury proceeding and created the possibility of prejudice to the defendant. Accordingly, the defendant's motion to dismiss the indictment pursuant to CPL 210.20 (1) (c) and 210.35 (5) should have been granted.

## IV

The defendant raises several additional claims. We need not address them in light of our determination as to the grand jury proceedings and the rule that a trial court's evidentiary rulings do not constitute the law of the case in the event of a retrial (*see People v Evans*, 94 NY2d 499, 504-506 [2000]).

Accordingly, the judgment is reversed, on the law, the defendant's motion to dismiss the indictment pursuant to CPL 210.20 (1) (c) and 210.35 (5) is granted, and the indictment is dismissed, with leave to resubmit the charges to another grand jury.

MASTRO, A.P.J., FLORIO and CHAMBERS, JJ., concur.

Ordered that the judgment is reversed, on the law, the defendant's motion to dismiss the indictment pursuant to CPL 210.20 (1) (c) and 210.35 (5) is granted, and the indictment is dismissed, with leave to resubmit the charges to another grand jury; and it is further,

Ordered that, pursuant to CPL 470.45, the matter is remitted to the Supreme Court, Kings County, and that court shall immediately cause the defendant to be brought before it forthwith, at which time that court shall issue a securing order in accordance with the provisions of CPL 210.45 (9).