■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN E. GORDON, Appellant. [956 NYS2d 674]—

Kavanagh, J.

For the reasons that follow, we agree with defendant that the presentation before the grand jury was so fundamentally flawed that reversal of defendant's conviction is required and that the indictment be dismissed with leave to re-present to another grand jury. Obviously, we recognize that defects in a grand jury presentation are rarely grounds for reversal, especially where there has been a trial on the merits that resulted in defendant's conviction. However, such action is warranted "where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the [g]rand [j]ury" (*People v Huston*, 88 NY2d 400, 409 [1996]; *see People v Revette*, 48 AD3d 886, 886-887 [2008]; *People v Samuels*, 12 AD3d 695, 697 [2004]). Here, there can be no doubt that the errors committed before the grand jury had a significant and decisive impact on its resolution of the key factual issue raised during this presentation—defendant's identification as the perpetrator of this robbery.

We begin by noting that before the grand jury, Habib testified that the perpetrator was wearing a mask and he could not make an identification because he did not "remember his face."[1] He was then asked, "at some point did [you] learn what his name was," and Habib answered, "somebody say his name is Kevin Gordon." No curative instruction was given regarding this testimony, which was rank hearsay and obviously inadmissible. Moreover, Habib was allowed to testify on four separate occasions before the grand jury that he had been told that the perpetrator's name was "Kevin Gordon." The importance of

---

1. Habib was not provided with a translator in the grand jury, but one was used when he testified at trial.

this testimony and the impact that it had on the grand jury is made manifest by the following exchange which took place between Habib and a grand juror:

"Grand Juror: Did you see his face before he put the mask on?

"Mr. Habib: No.

"Grand Juror: So how did you know who he was?

"Mr. Habib: I remember his name. His name, somebody tell me his name is Kevin Gordon.

"Grand Juror: Somebody told you his name?

"Mr. Habib: Yes, somebody told me his name was Kevin Gordon.

"Grand Juror: But you didn't see his face?

"Mr. Habib: No.

"Grand Juror: They were not together?

"Mr. Habib: No. One guy scare, me, Kevin Gordon."

The magnitude of these errors was compounded when Ahad Shafiq, another store employee, testified before the grand jury that "Habib, he told me it was the same guy that came last night and they usually sell stolen stuff, so I know the guy from over there."[2] Here, for the first time, a curative instruction was given to the grand jury that such testimony was hearsay and could not be considered as evidence of defendant's identification as the perpetrator. However, a subsequent witness, Detective Michael Kelly, was allowed to testify that Shafiq, while viewing a video of the robbery, identified defendant as the perpetrator and that both Habib and Shafiq identified Tony Mitchell as the individual who entered the store just prior to the perpetrator and had gone into the restroom shortly before this crime was committed. More importantly, Kelly testified that Mitchell told him that defendant was the masked perpetrator who committed the robbery.[3] While the grand jury was again given a limiting instruction regarding this testimony, it was also told that it could "consider it for the fact the name of a suspect was provided to other parties who identified Kevin Gordon without his name as the person who committed this robbery." Such an instruction, on its face, was confusing and contradictory and, in our view, did little to minimize the prejudice to defendant from the admission of this testimony.

Defendant's identification was the principal issue raised by

---

**2.** In its *Molineaux/Ventimiglia* determination, County Court barred any reference by Shafiq at trial that the two men usually "sell stolen stuff."

**3.** Mitchell did not testify before the grand jury or at trial.

this presentation before the grand jury. It is inconceivable on this record that this evidence, all of which was inadmissible, did not have a prejudicial impact on the grand jury in terms of its resolution of this issue and its decision to charge defendant with this robbery and attempted assault. Absent such evidence, the proof before the grand jury as to defendant's guilt was by no means overwhelming (compare *People v Arbas*, 85 AD3d 1320, 1321 [2011], *lv denied* 17 NY3d 813 [2011]; *People v Miles*, 76 AD3d 645, 645 [2010]). As a result, the integrity of the grand jury proceedings was so impaired by the admission of this hearsay that reversal of the underlying conviction is required with leave to re-present the matter to another grand jury.

Given the other issues raised on this appeal, and the fact that defendant may well face another indictment charging him with the commission of this robbery and attempted assault, we must address his contention that the jury's verdict was not supported by legally sufficient evidence and is against the weight of the credible evidence introduced at trial. In that regard, Habib testified at trial that moments before the robbery, an individual entered the store wearing a black jacket and asked to use the restroom.[4] Shortly thereafter, another man—subsequently identified as defendant—entered the premises wearing a mask over his face and a long black and blue jacket bearing a North Face logo. This individual threatened Habib with a knife, took money from the cash register and fled the premises after jabbing Habib in the stomach with the knife, causing a minor injury. At that point, the other individual left the scene. A surveillance camera in the store captured the incident, but because the perpetrator was wearing a mask, Habib could not make an identification. However, Shafiq, an employee who worked at the store the previous evening, testified that the two men depicted in the surveillance video had been together in the store on prior occasions and, in fact, had been on the premises the prior evening. He said that the man seen in the video going to the restroom had, the night before, been wearing a North Face jacket identical to that worn by the perpetrator of the robbery, and identified defendant as the perpetrator, even though the perpetrator was masked and his face was not visible.

This evidence identifying defendant as the perpetrator of the robbery was corroborated by the testimony of Michael Chase, an acquaintance of defendant who lived in a nearby apartment, who testified that defendant was at his apartment that morning

---

4. This individual was identified before the grand jury as Mitchell, but was not so identified by name at trial.

shortly before the robbery.[5] He indicated that prior to leaving the apartment that morning, defendant was wearing a mask and a long dark coat and said he was going to rob a store. When defendant returned to the apartment a short time later, he allegedly told Chase that "he got the money, that he hurt the guy in the store." A surveillance camera at the apartment complex confirmed that defendant was on the premises that morning. While Chase's credibility was vigorously challenged on cross-examination and segments of his testimony were undoubtedly questionable, his testimony as corroborated by other evidence introduced at trial was not, in our view, incredible as a matter of law (*see People v Blond*, 96 AD3d 1149, 1152 [2012], *lv denied* 19 NY3d 1101 [2012]; *People v Rice*, 90 AD3d 1237, 1238 [2011], *lv denied* 18 NY3d 961 [2012]; *People v Davis*, 83 AD3d 1210, 1211 [2011], *lv denied* 17 NY3d 794 [2011]; *People v Toland*, 2 AD3d 1053, 1055 [2003], *lv denied* 2 NY3d 808 [2004]). Moreover, viewing the evidence in the light most favorable to the People (*see People v Perez*, 93 AD3d 1032, 1035 [2012], *lv denied* 19 NY3d 1000 [2012]), and giving the People the benefit of the rational inferences that can be drawn from it, we find that legally sufficient evidence was presented that defendant was the perpetrator (*see People v Burnell*, 89 AD3d 1118, 1120 [2011], *lv denied* 18 NY3d 922 [2012]; *People v Elwood*, 80 AD3d 988, 989-990 [2011], *lv denied* 16 NY3d 858 [2011]). Further, the jury's verdict was not against the weight of the credible evidence introduced at trial (*see People v Romero*, 7 NY3d 633, 644 [2006]).

Based on the foregoing, we need not address the other claims that defendant has raised during the course of this appeal.

Rose, J.P., Lahtinen, Spain and McCarthy, JJ., concur. Ordered that the judgment is reversed, on the law, and indictment dismissed, with leave to the People to re-present any appropriate charges to another grand jury.

---

5. Chase did not testify before the grand jury.