[686 NYS2d 375]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v EDDIE
TORRES, Respondent.

First Department, February 25, 1999

**APPEARANCES OF COUNSEL**

*Stanley R. Kaplan* of counsel (*Joseph N. Ferdenzi* on the brief; *Robert T. Johnson, District Attorney* of Bronx County, attorney), for appellant.

*Cynthia Colt* of counsel (*M. Sue Wycoff*, attorney), for respondent.

**OPINION OF THE COURT**

Sullivan, J. P.

The People appeal from the dismissal of counts one through six of the indictment, charging defendant, acting in concert with others, with the crimes of attempted murder in the second degree (two counts), attempted assault in the first degree (two

counts) and assault in the second degree (two counts) because of the prosecutor's failure to instruct the Grand Jury on the defense of justification. Additionally, the motion court dismissed count eight, charging defendant, again acting in concert with others, with the crime of criminal possession of a weapon in the fourth degree, a misdemeanor, on the ground that the prosecutor had failed to instruct the Grand Jury properly on defendant's accessorial liability, leaving standing only count seven charging criminal possession of a weapon in the fourth degree, as to which there was no issue of accessorial liability and the evidence was found sufficient. The two victims, under the attempted murder and assault counts, Daniel Cardona and Eduardo Semprit, testified before the Grand Jury. Defendant did not testify or present any witnesses.

The transcript of the Grand Jury proceeding reveals the following. On April 26, 1997, at approximately 10:10 P.M., Cardona, his friend Semprit and two others were walking on Eastchester Road in the Bronx, a residential neighborhood, on their way to Semprit's house when they met defendant, whom both Cardona and Semprit knew for a few months, and two other men, Will and Angel, who, apparently, were attending a party in the driveway of 2753 Eastchester Road. While Cardona continued walking, Semprit stopped to talk to some women at the party. As he walked by, Cardona heard defendant call his name and say something, which he could not comprehend because of the loud music. When Cardona turned and asked defendant to repeat what he had said, defendant and the other two men surrounded him in a semicircle, with defendant in the middle, Angel on defendant's left side and Will on his right. According to Cardona, Angel and Will were making comments and "looked like they was going to do something, because I felt threatened."

At the same time, defendant was "getting fidgety with his hands", which were in his pockets as if he were looking for something. According to Cardona, "Angel was about to strike me * * * he was leaning back * * * he had a closed fist but it was a little low, but he was coming around. He was winding up." Cardona testified that "out of natural instinct reaction, I swung first. Before he could hit me[,] I hit him first." Angel fell to the ground.

With that, defendant said, "[Y]ou want to play?" He then took a folding knife from his pocket and said to Cardona, "I got something for you." Defendant began lunging and "poking" at Cardona, who tried to knock the knife out of defendant's hand

with a bookbag that he was swinging. When defendant's friend, Will, began to attack Cardona, who was still engaged with defendant, Semprit joined the fray and pulled Will off of Cardona. Defendant, continuing to lunge at Cardona, then stabbed Cardona "with the knife that he had in his hands. * * * He cut me in my chest, right here, underneath my armpit," missing Cardona's heart by about two inches.

After the stabbing, Angel grabbed Cardona, forcing him to the ground. Defendant then began hitting Cardona on the side of the head. Feeling a burning sensation, Cardona believed that he was being stabbed. Cardona, still being held down by Angel, saw defendant go over to where Semprit was "rolling around with Willie". Defendant, "the only person that was free", was running back and forth hitting both Cardona and Semprit. Cardona saw defendant "hit my friend [Semprit] in the back with his hand. I guess that's when he got stabbed, because he does have a stab wound." According to Cardona, defendant had a knife in his hand, the same knife that he had been stabbed with, when he hit Semprit, who, immediately thereafter, began bleeding from the head.

As Cardona and Angel wrestled against a car, defendant came back over to Cardona and "hit [him] in the back of [his] head again." Cardona managed to break away from Angel and accompanied Semprit to the latter's house, and, then, to the hospital, where he was treated for a stab wound to his chest, scraped knees and elbows and a large bump on his hand. He was admitted for 24-hour observation because of the possibility of internal bleeding. Cardona testified that neither he nor Semprit possessed a weapon of any kind.

Semprit, who had known defendant for six months, having seen him seven or eight times, and also knew Will and Angel, testified, corroborating Cardona's account of the initial confrontation. Having stopped to talk to some young women, he saw Cardona "swing his bookbag at [defendant] and Will * * * [T]hey weren't swinging at him, they were poking at him." Semprit ran up behind Will and "grabbed him from behind so I could control him, and then he pulled his hand away." Semprit "felt my hand burn * * * and someone hit me from behind. They hit me hard * * * in my back." Semprit, still scuffling with Will, could not see who hit him "because when I turned around * * * my body felt weak and I fell down to the ground." As they struggled on the ground, Semprit could see in Will's hand "something silver", which he could not identify "because [he] was too busy moving out of the way."

Will was poking at his chest and face. As Semprit tried to protect himself, he "felt [his] hand burn more" but he managed to get up, even though Will hit him on the head with "[w]hatever was in his hand," and ran away. Later, he found that he had been "sliced in the back of [his] head, and [he] got stabbed in [his] back, and sliced on [his] hand." Semprit was certain that Will had inflicted the cuts on his head and hands but he could not say who stabbed him in the back, although, at the time, defendant was the closest one to him. Nor could he say who stabbed his friend, Cardona, because he did not see the stabbing. The cuts on Semprit's head and hand were sutured; the stab wound to his back was not because the doctor "didn't want to close it just in case there [was] an infection, so they left it open." Semprit was hospitalized overnight.

■ In our view, the motion court erred in concluding that the attempted murder and assault counts had to be dismissed because the prosecutor failed to instruct the Grand Jury on the defense of justification and that these counts, as well as the eighth count, charging the criminal possession of a knife, also had to be dismissed because of an improper charge on acting in concert. As the transcript of the Grand Jury proceedings makes clear, there was no reasonable basis upon which to charge justification; furthermore, the accomplice liability charge, viewed in its entirety, was proper.

As a matter of statutory law, a person is not entitled to use deadly physical force upon another unless he or she "reasonably believes that such other person is using or about to use deadly physical force." (Penal Law § 35.15 [2] [a].) There is no justification for the use of deadly physical force in self-defense or in defense of a third person other than as contained in Penal Law § 35.15 (2). (*People v Magliato*, 68 NY2d 24, 30.)

"Reasonable belief" involves both a subjective and objective component. A person must actually believe that deadly force is necessary to avert the imminent use of deadly physical force and that belief must be reasonable based upon the circumstances attending the incident, including any knowledge the person had of the purported assailant, the physical attributes of the parties and any prior experiences that could reasonably provide a basis for the belief that deadly physical force was about to be used against him or her. (*People v Goetz*, 68 NY2d 96, 114-115.) The term "deadly physical force" is defined as "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." (Penal Law § 10.00 [11].)

Where the evidence supports a defense of justification, it must be charged. (*People v Cox*, 92 NY2d 1002; *People v Padgett*, 60 NY2d 142, 145.) In determining whether justification should be charged, the record must be viewed in the light most favorable to the defendant. (*People v Padgett, supra*, 60 NY2d, at 144-145.) Even viewing the evidence in that light, the instruction is not warranted when "no reasonable view of the evidence establishes the elements of the defense." (*People v Reynoso*, 73 NY2d 816, 818, *habeas corpus denied sub nom. Reynoso v Leonardo*, 735 F Supp 134, *affd* 916 F2d 709; *see, People v Watts*, 57 NY2d 299.) The question is whether the defense is "supported by a *reasonable view* of the evidence— not by any view of the evidence, however artificial or irrational." (*People v Butts*, 72 NY2d 746, 750.)

The transcript of the Grand Jury proceeding fails to show any evidence whatever that could reasonably provide a basis for defendant's reasonable belief that Cardona was about to use deadly physical force against him. Nothing in the transcript even hints, much less demonstrates, that Cardona ever threatened defendant with deadly physical force. Although defendant witnessed Cardona's getting in the first blow, a punch directed at Angel, this use of physical force did not constitute deadly physical force so as to justify defendant's retaliatory response of taking out a knife and thrusting it at Cardona. (*See, People v King*, 186 AD2d 683, *lv denied* 81 NY2d 842.) Such use of deadly physical force was clearly unjustified. Even if there were a suggestion that defendant subjectively believed that the use of deadly physical force was imminent, there is, in this record, no objective basis to conclude that such belief was reasonable. (*See, Abbott v People*, 86 NY 460, 470-471.)

Furthermore, defendant's actions in continuing to assault Cardona after he had been brought to the ground evidence an intent to inflict injury without reference to any legitimate need to defend himself or a third person. This intent was also manifested in defendant's attack on Semprit, whom he struck in the back and who, unarmed, was struggling with Will on the ground. (*See, People v Lucena*, 243 AD2d 269, *lv denied* 91 NY2d 876.) Although the motion court found that defendant had stabbed only Cardona and that his liability was that of an accomplice with respect to the attack on Semprit, the transcript clearly shows that Semprit received a stab wound in the back and, at the time, defendant was "the only person that was free" to stab him.

Entitlement to a justification charge also requires a defendant to show that he or she had either satisfied the duty to

retreat or that he or she was not under any such duty. (Penal Law § 35.15 [2] [a]; *People v Watts, supra,* 57 NY2d, at 301.) Contrary to the motion court's finding that retreat was not an option because Angel was still on the ground at the time defendant took out his knife, there was no evidence that Cardona, after striking Angel, was continuing the fracas. Rather, the record indicates that Angel and defendant could have retreated with complete safety. It was defendant who decided to escalate the situation by taking out his knife and lunging and thrusting the knife at Cardona. Indeed, Angel was able to get up after Cardona hit him; he used the opportunity to assist defendant in his attack on Cardona, forcing him to the ground. As already noted, defendant continued his assault on both Cardona and Semprit even after Cardona had been stabbed.

■ As for the motion court's finding of an improper acting in concert charge, it should be observed that a prosecutor is not required to charge a Grand Jury with the same precision that a court charges a petit jury. (*People v Goetz,* 68 NY2d 96, 115, *supra; People v Calbud, Inc.,* 49 NY2d 389, 394.) In its ruling, the motion court segmented the prosecutor's charge on acting in concert and isolated one portion, finding it to be incorrect. The court seized upon the following language: "When an unlawful act is sought to be effected and two or more persons joined by a common purpose of accomplishing that end work together in any way in furtherance of the unlawful scheme, each and every one of the parties becomes a member of such unlawful undertaking." According to the motion court, in so charging, the prosecutor improperly suggested that "all conspirators are, *ipso facto,* liable for all the underlying substantive crimes of the conspiracy." The court noted, "Even co-conspirators * * * are liable for only those underlying substantive charges which they committed or for which accessorial liability [Penal Law § 20.00] has been established; in other words, only where they had intentionally solicited, requested, commanded, importuned or aided the actual perpetrator." Glaringly omitted in the motion court's analysis is the fact that the prosecutor's charge on acting in concert conveyed these very principles to the Grand Jury. Indeed, the prosecutor explicitly quoted Penal Law § 20.00: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." The prosecutor further observed that "[a]ll

persons who intentionally participate in the commission of a crime are accomplices of each other, and therefore, are legally responsible for the crime." Thus, it is clear that the charge, taken as a whole, correctly conveyed the proper legal standard. (*See, People v Herrera*, 219 AD2d 511, *lv denied* 87 NY2d 847; *People v Pla*, 210 AD2d 77, *lv denied* 85 NY2d 912.)

Moreover, the record is bereft of any evidence of the type of conduct that the Grand Jury might improperly scrutinize on the basis of the criticized instruction. As the evidence shows, defendant, charged, *inter alia*, with attempting to murder Cardona and with assaulting him, lunged at Cardona with a knife and stabbed him. Thus, the only relevant question was whether defendant was directly responsible for these actions. Even as to the stabbing of Semprit, Cardona testified that defendant hit Semprit in the back, where, as it turned out, Semprit sustained a stab wound. Cardona testified that defendant was the only participant in a position to stab Semprit. Furthermore, the evidence showed that defendant joined Angel in assaulting Cardona and acted in tamdem with Will in assaulting Semprit. Nothing in the record suggests that these charges are based on defendant's mere presence as Angel and Will engaged in acts of violence against both victims.

In any event, even taking the criticized language out of context, as did the motion court, the phrase "joined by a common purpose" is just another way of saying "acting with the mental culpability required" (Penal Law § 20.00), while the phrase "work together," as used in the criticized charge, suggests "intentionally aid[ing]" another in an unlawful undertaking. (*Ibid.; see, People v Kaplan*, 76 NY2d 140, 144-145.) If the motion court's rigid interpretation of the accomplice liability charge were to prevail, whenever a prosecutor, in a Grand Jury charge, employed synonymous words or phrases for the statutory language, dismissal would inevitably follow. As noted, a prosecutor need not charge a Grand Jury with the same precision that a court would charge a petit jury. (*People v Goetz, supra*, 68 NY2d, at 115; *see*, CPL 210.35.) Dismissal of an indictment is permitted where the Grand Jury proceeding fails to conform to the requirements of CPL article 190 to such degree that the integrity of the Grand Jury is impaired and prejudice to the defendant may result. (CPL 210.35 [5].) Dismissal under such a precise standard is an extraordinary remedy. (*People v Darby*, 75 NY2d 449, 455.) Not every omission or imprecision in the legal instruction impairs the integrity of the Grand Jury. (*See, People v Prue*, 219 AD2d 873.)

Accordingly, the order of the Supreme Court, Bronx County (Caesar Cirigliano, J.), entered March 6, 1998, dismissing counts one through six and count eight of the indictment, should be reversed, on the law, the motion to dismiss denied, the dismissed counts reinstated and the matter remanded for further proceedings.

ROSENBERGER, WILLIAMS and SAXE, JJ., concur.

Order, Supreme Court, Bronx County, entered March 6, 1998, reversed, on the law, the motion to dismiss counts 1 through 6 and count 8 of the indictment denied, the dismissed counts reinstated and the matter remanded for further proceedings.