(September 22, 2015)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE MOREL, Appellant. [17 NYS3d 102]—

Judgment, Supreme Court, New York County (Juan M. Merchan, J.), rendered February 6, 2013, convicting defendant, after a jury trial, of assault in the first degree, and sentencing him to a term of eight years, unanimously affirmed.

In this prosecution for assault in the first degree, a month after the trial jury found defendant guilty, he moved pursuant to CPL 330.30 (1) to set aside the verdict and dismiss the indictment because the justification defense had not been presented to the grand jury. The court denied the motion as untimely (*see* CPL 250.20 [1], [3]) and declined to consider it on the merits in the interest of justice. We affirm on the ground that, even assuming, without deciding, that defendant's motion was timely made, the record establishes that this matter does not present one of the "rare cases of prosecutorial misconduct" entitling a defendant to "[t]he exceptional remedy of dismissal [of the indictment]" (*People v Thompson*, 22 NY3d 687, 699 [2014] [internal quotation marks omitted]). Here, defendant chose not to testify before the grand jury, and, absent his testimony, there was no evidence before the grand jury to support a claim of justification, a defense that was ultimately presented to the trial jury and rejected.

According to the People's evidence, at approximately 9:00 to 9:30 P.M. on October 16, 2011, defendant was returning his four year old daughter to her mother, Engis Maracallo, on West 145th Street between Broadway and Amsterdam Avenue in Manhattan. At that time, Maracallo was living at the apart-

ment of her boyfriend Luis Valdez. Defendant arrived in his car with his daughter in the back seat. As Maracallo and Valdez approached the car, Maracallo tried to open the rear passenger side door in order to remove her daughter but defendant moved his vehicle forward a short distance. Maracallo again tried to open the car door but defendant again moved forward. Defendant then got out of his car, approached Valdez with his hand concealed behind his back and swung a machete first at Valdez's leg, cutting through the entire muscle, and then at his left arm, nearly severing it. Valdez then pulled out an ASP baton, an expandable metal stick that he used in his work as a private security officer, but he was too weak to extend it or strike defendant with it. While Valdez's friends pulled him to the sidewalk, Maracallo retrieved her daughter from the car. Defendant placed the bloody machete in the car and took out a metal bat before getting back into his car and driving away.

The next day, Detective Jose Oliveras arrested defendant. The DD5 form completed by the detective reflects that defendant told him that he acted in self defense, and that Valdez was banging on his car window while holding a stick. The case was ultimately submitted to a grand jury, before which defendant opted not to testify. The grand jury returned an indictment charging defendant with one count of assault in the first degree. At defendant's arraignment, the People served him with a voluntary disclosure form containing his statement claiming to have acted in self defense.

Defendant's trial commenced on November 8, 2012. Defense counsel, in his opening statement, maintained that it was Valdez who started an argument with defendant when the latter was dropping off his daughter, that it was Valdez who attacked defendant with a police-type baton called an ASP baton, and that defendant used a knife only to protect himself.

Valdez, the People's first witness, testified upon direct examination that defendant attacked him with a machete and, after being struck twice by the machete, Valdez pulled out the ASP baton. During cross examination, Valdez claimed that he did not tell anyone about the baton at the crime scene or in the emergency room. When asked if he told the assistant district attorney (ADA) about the baton, he responded in the affirmative. As to the timing of that disclosure the following exchange occurred:

"Q When did you tell the district attorney you had an ASP baton?

"A When I spoke to her when I came to see her.

"Q When? Before your testimony before the grand jury?

"A Right around the same—right after. If I'm not mistaken.

"Q And was that around the time of the incident? . . .

"A No, it wasn't.

"Q Well, when was it?

"A It was after.

"Q How long after?

"A A few months after.

"Q This happened October 16, 2011?

"A Yes.

"Q Was it in December?

"A Yes.

"Q That's two months after, correct?

"A Yes.

"Q Did you tell the district attorney before you testified before the grand jury?

"[ADA]: Objection. . . . It's all hearsay . . . It is prior consistent statements . . .

"[Defense counsel]: Can I explain, Judge? . . . What's happening here is that I had advised the district attorney around that time that my client had stated that the complainant had an ASP baton. The district attorney never acknowledged that my client—that the complainant had an ASP baton. And I believe that if she was aware before the case was presented to the grand jury, and I believe that if that was the case, and given the fact that my client had also stated to a detective that the complainant had a stick and that he acted in self-defense.

"First, I think that would have been Brady material that should have been provided to the defense.

"Two, I believe that would have definitely required an investigation and potentially the presentation to the grand jury regarding the justification defense in this case.

"It is only at this time that I confirm through the complainant's testimony that there was in fact an ASP that the People and potentially the police department knew existed all along. My client has been telling me there was an ASP.

"THE COURT: Well, getting into it would be an issue or not. And without getting into whether this puts upon the prosecutor any kind of burden to charge the jury, the grand jury the justification defense.

"I'm going to allow this line of questioning and give you some latitude to exposed [sic] questioning if that would go to the complainant's credibility.

"If in fact he had an ASP at the time of the incident and that he took measures to conceal that—to keep it from the prosecution, it could go to his credibility. For that reason I'm allowing—I'm not going to rule whether it's a Brady issue. Should have been brought to the attention of the grand jury."

The ADA objected that the court was permitting Valdez to be impeached by omission (i.e., by what he failed to tell the grand jury), although he had only been asked to briefly summarize what happened. Nevertheless, this line of cross examination was permitted and, upon further questioning by defense counsel and repetition of the question as to when he told the ADA about the baton, Valdez indicated that he told her about the baton before testifying to the grand jury.

Later in the trial, defendant testified in his own behalf that he did not have a machete with him but rather a punal knife, which is thin and 12 to 14 inches in length, and that he took the knife out from under the seat of the car when he saw Valdez coming at him swinging his baton, which was small and not extended. While Valdez made many unsuccessful attempts to hit defendant with the baton, defendant struck Valdez with the knife twice. Later that day, defendant threw the knife into the river.

Before summations began, defendant moved for a trial order of dismissal on the grounds that the People had not proved the elements of assault in the first degree beyond a reasonable doubt; that the People had not established a prima facie case; and that the People had not established that Valdez suffered serious physical injury. The court reserved decision. Thereafter, the jury was charged on justification but, nevertheless, on November 16, 2012, it convicted defendant of assault in the first degree.

After the verdict was announced, the court asked whether there were any applications or motions, whereupon defense counsel stated that he was "reserving at this time," although he believed that the verdict was against the weight of the evidence. The case was adjourned to December 3, 2012, for sentencing. On that date defendant orally moved to set aside the verdict pursuant to CPL 330.30 (1). This was followed by a written motion filed on December 17, 2012, seeking an order setting aside the verdict and ordering a new trial because the People had committed a *Brady* violation by denying the existence of the ASP baton notwithstanding that the ADA knew about it even before presenting the case to the grand jury. Defendant also sought an order dismissing the indictment on the ground that Valdez's possession and use of the baton required

the grand jury to have been informed that Valdez possessed an ASP baton and charged on the defense of justification. While defendant recognized that his motion was not timely, he claimed that any lateness should be excused because he first learned from Valdez's cross examination at trial that the ADA had known of the baton when the case was presented to the grand jury. In an opposing affirmation, the People denied knowing about the baton before presenting the case to the grand jury.

Supreme Court denied the motion. It found that there was no *Brady* violation because defendant knew about the baton from the outset of the prosecution and he did not need the People to confirm its existence in order to assert his justification defense. In regard to the request to dismiss the indictment for failure to present a justification defense to the grand jury, the court found that the motion was not timely and declined to consider it in the interest of justice.

On appeal, while defendant does not challenge the trial court's rejection of his *Brady* claim, he argues that his motion to dismiss the indictment, based on the People's failure to charge the grand jury on justification, was timely made and should have been granted. In the alternative, he argues that the motion, even if untimely, should have been considered on its merits in the interest of justice. We affirm on the ground that, on the merits, defendant was not entitled to the extraordinary relief of dismissal of the indictment.

It is axiomatic that a prosecutor, in presenting evidence and potential charges to a grand jury, is " 'charged with the duty not only to secure indictments but also to see that justice is done' " (*People v Huston*, 88 NY2d 400, 406 [1996], quoting *People v Pelchat*, 62 NY2d 97, 105 [1984]). The role of the grand jury is not only to investigate criminal activity to see whether criminal charges are warranted but also to protect individuals from needless and unfounded charges (*People v Lancaster*, 69 NY2d 20, 25 [1986], *cert denied* 480 US 922 [1987]). For that reason, justification, as an exculpatory defense that if accepted eliminates any grounds for prosecution, should be presented to the grand jury when warranted by the evidence (*People v Valles*, 62 NY2d 36 [1984]). However, a prosecutor, in presenting a case to a grand jury, is "not obligated to search for evidence favorable to the defense or to present all evidence in [the People's] possession that is favorable to the accused . . . In the ordinary case, it is the defendant who, through the exercise of his own right to testify . . . , brings exculpatory evidence to the attention of the Grand Jury" (*People v Lancaster*, 69 NY2d

at 25-26 [citations omitted]). Thus, a prosecutor is not obligated to present to the grand jury a defendant's exculpatory statement made to the police upon arrest (*see People v Mitchell*, 82 NY2d 509, 513-515 [1993]). Where, however, a prosecutor introduces a defendant's inculpatory statement to the grand jury, he is obligated to introduce an exculpatory statement given during the course of the same interrogation which amplifies the inculpatory statement if it supports a justification defense (*People v Falcon*, 204 AD2d 181 [1994], *lv denied* 84 NY2d 825 [1994]).

Here, defendant does not claim that the People introduced his inculpatory statement without also introducing a connected exculpatory statement making out a justification defense. Hence, the prosecutor was under no obligation to introduce defendant's claim upon arrest of having acted in self-defense.

An instructive contrast to the case at bar is provided by *People v Samuels* (12 AD3d 695 [2d Dept 2004]). While the *Samuels* conviction was reversed based on a failure to charge the grand jury on justification, in *Samuels*, unlike the instant case, the defendant testified before the grand jury and presented a version of events that arguably made out a justification defense. The majority held that, notwithstanding the trial jury's rejection of the defense, reversal was warranted because of the failure to charge the grand jury on justification (*id.* at 698-699). In *Samuels*, the defendant herself placed evidence supporting her justification defense before the grand jury and was therefore entitled to have the grand jury charged on the issue (*id.* at 699). That is not the situation here, where the grand jury did not hear *any* testimony that would have supported a charge on justification. Not only did the complainant not testify that he had an ASP baton in his possession during the incident, defendant himself, with direct knowledge of the incident and of any circumstances that would have justified his actions, chose not to exercise his right to testify before the grand jury.

Assuming arguendo that, as claimed by defendant and denied by the People, the ADA did know about the ASP baton at the time of the grand jury proceedings, dismissal of the indictment based on the failure to charge the grand jury on justification still would not be warranted. "A Grand Jury proceeding is not a mini trial . . . The prosecutor . . . need not disclose certain forms of exculpatory evidence . . . [Nor is] the prosecutor . . . obligated to present the evidence or make statements to the grand jurors in the manner most favorable to the defense" (*People v Thompson*, 22 NY3d at 697-698

[internal quotation marks and citations omitted]). As previously noted, a prosecutor is "not obligated to search for evidence favorable to the defense or to present all evidence in [the People's] possession that is favorable to the accused . . . In the ordinary case, it is the defendant who, through the exercise of his own right to testify . . . , brings exculpatory evidence to the attention of the Grand Jury" (*People v Lancaster*, 69 NY2d at 25-26 [citations omitted]). Moreover, as to defendant's statement in the police report claiming to have acted in self defense, we reiterate that the People are not required to introduce the accused's exculpatory statements to the grand jury when those statements are not part of a single statement, the inculpatory portions of which were presented to the grand jury (*see People v Mitchell*, 82 NY2d at 513). Again, the People did not present to the grand jury any portion of defendant's statement to the police.

We are mindful, of course, that "due process imposes upon the prosecutor a duty of fair dealing to the accused and candor to the courts," a duty that "extends to the prosecutor's instructions to the grand jury and the submission of evidence" (*People v Thompson*, 22 NY3d at 697 [internal quotation marks omitted]). Nonetheless, the "exceptional remedy of dismissal" is not available here, where defendant has not shown any misconduct by the prosecutor, much less that his indictment resulted from "an over-all pattern of bias and misconduct that [was] pervasive and . . . willful" (*id.* at 699 [internal quotation marks omitted]).* As defendant does not raise any other arguments for reversal, the judgment of conviction is affirmed. Concur—Tom, J.P., Friedman, Renwick, Manzanet-Daniels and Kapnick, JJ.

---

* Again, given that defendant chose not to testify before the grand jury, we observe that it is questionable whether a justification charge would have been warranted had Valdez testified that he was in possession of the ASP baton during the incident, without further evidence to support defendant's position that he reasonably believed that the use of deadly force by Valdez was imminent (*see* Penal Law § 35.15 [1]; *People v Torres*, 252 AD2d 60, 65 [1st Dept 1999], *lv denied* 93 NY2d 1028 [1999]).