| People v Peterson |
|---|
| 2023 NY Slip Op 34714(U) |
| June 15, 2023 |
| County Court, Westchester County |
| Docket Number: Indictment No. 70543-23 |
| Judge: Robert J. Prisco |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

FILED

JUL 1 3 2023

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

COUNTY COURT: STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK

-against-                                                                    DECISION & ORDER

TIMOTHY PETERSON,

                                                                                   Indictment No: 70543-23
                                                                    Defendant.
-----------------------------------------------------------------x
ROBERT J. PRISCO, J.

Defendant **TIMOTHY PETERSON** is charged by Indictment Number 70543-23 with Attempted Murder in the Second Degree pursuant to Penal Law [PL] §§ 110 and 125.25 (1) [Count One], Assault in the First Degree pursuant to PL § 120.10 (1) [Count Two], and Criminal Possession of a Weapon in the Third Degree pursuant to PL § 265.02 (1) [Count Three]). In sum and substance, it is alleged that Defendant intentionally attempted to cause the death of another person by stabbing that individual with a knife, thereby resulting in serious physical injury to such person. The offenses are alleged to have occurred in the vicinity of 83 Riverdale Avenue, in the City of Yonkers, at approximately 10:00 p.m., on December 1, 2022.

On March 10, 2023, Defendant was arraigned by this Court on the charges contained in Indictment Number 70543-23. Attached to the Indictment is an Information accusing Defendant of having previously been convicted of Attempted Criminal Possession of a Weapon in the Second Degree in violation of PL §§ 110 and 265.03 (3), in the Westchester County Court, on or about July 15, 2014. Also attached to the Indictment are a CPL § 710.30 (1) (a) Notice,[1] two (2) CPL § 710.30 (1) (b) Notices,[2] and the People's Demand for a Notice of Alibi pursuant to CPL § 250.20.

On March 22, 2023, the People served and filed, via email, a Certificate of Compliance pursuant to CPL § 245.50 (1), with an attached "Discovery Disclosure Index" that identifies the

_____

[1] The CPL § 710.30 (1) (a) notice pertains to electronically recorded oral statements that were allegedly made by Defendant at the Yonkers Police Department, at approximately 5:00 a.m., on December 2, 2022.

[2] The two (2) CPL § 710.30 (1) (b) Notices pertain to a photographic array identification that allegedly occurred at the Yonkers Police Department on December 2, 2022, and a video identification that allegedly occurred at 83 Riverdale Avenue on December 1, 2022.

1

items and materials that have reportedly been disclosed or provided to defense counsel.[3] Also attached to the Certificate of Compliance are Discovery Package Transmittal Notices from the Westchester County District Attorney's Office which delineate the dates, times and methods of such disclosures. Within the People's Certificate of Compliance is a "Statement of Readiness," wherein the People state that they "confirm and announce their readiness for trial on all counts charged."

On April 7, 2023, the People served and filed, via email, a Supplemental Certificate of Compliance which includes a "Statement of Readiness," wherein "[t]he People confirm and announce their readiness for trial on all counts charged." Attached to the Supplemental Certificate of Compliance are Discovery Package Transmittal Notices from the Westchester County District Attorney's Office.

On April 10, 2023, the Court received the People's Bill of Particulars.

On April 25, 2023, via email, the Court received Defendant's Notice of Motion, an Affirmation in Support of Motion, and a Memorandum of Law in Support of Omnibus Motion (hereinafter "Memorandum of Law"), seeking various forms of judicial intervention and relief.

On May 9, 2023, via email, this Court received the People's Affirmation in Opposition and a Memorandum of Law in response to Defendant's motion for omnibus relief.

The Court is also in receipt of unredacted certified copies of the stenographic transcripts of the Grand Jury proceeding dated February 15 and 22, 2023, and the instructions on the law dated February 24, 2023, along with a flash drive containing copies of the Grand Jury exhibits that were received in evidence. The Court has further been provided with the Search Warrant Application and Order dated December 2, 2022.

After consideration of the above referenced submissions and the unredacted certified copies of the stenographic transcripts of the Grand Jury proceeding and the instructions on the law provided therein, the Court decides Defendant's Motion as follows:

---

[3] During a court appearance on March 24, 2023, defense counsel acknowledged receipt of the People's Certificate of Compliance. Although the grand jury minutes were still outstanding, the People confirmed their actual readiness for trial on the record when the Court made inquiry thereof pursuant to CPL § 30.30 (5).

2

## 1. MOTION FOR EXCULPATORY MATERIAL.

Defendant moves to be provided with "all information material and property of whatever kind within the knowledge, possession or control of the District Attorney or any law enforcement agency which may assist the defense or tend to exculpate defendant, or to negate any element of any crime charged against him, or to mitigate the degree of any such crime, or to reduce his criminal liability or lessen his potential punishment, or which supports the position of the defense or tends to disprove the position of the prosecution at any anticipated trial or hearing of this matter" (*see* Point A, Pages 1-3, of Defendant's Notice of Motion). Defendant further provides a list of materials and information that he is seeking to be provided with (*Id.* at Page 2, Paragraphs (a)- (h).

In response, the People acknowledge "their continuing obligation to disclose exculpatory evidence that is within their possession pursuant to *Brady v Maryland* (373 US 83 [1963]) and *People v Fein* (18 NY2d 162 [1966])," state that "[t]o the extent such material becomes known and is in possession of the People, it will be provided to the defendant…[and represent that] the People have and will continue to comply with their obligations under CPL 245.20 (1) (k), (l), and (p)" (*see* Point Seven, Page 18, of the People's Memorandum of Law).[4]

The People are respectfully reminded to remain cognizant of their discovery obligations not only as required by *Brady*, *Giglio v United States*, 405 US 150 [1972], *People v Geaslen*, 54 NY2d 510 [1981], and their respective progeny, but also as mandated by CPL Article 245. Specifically, CPL § 245.20 (1) (k) requires that the prosecutor disclose "[a]ll evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in this case, that tends to: (i) negate the defendant's guilt as to a charged offense; (ii) reduce the degree of or mitigate the defendant's culpability as to a charged offense; (iii) support a potential defense to a charged offense; (iv) impeach the credibility of a testifying prosecution witness; (v) undermine evidence of the defendant's identity as a perpetrator of a charged offense; (vi) provide a basis for a motion to suppress evidence; or (vii) mitigate punishment" and such disclosure must occur expeditiously upon its receipt, "whether or not such

---

[4] The People also acknowledge their obligation "to disclose the terms of any deal or agreement between the government and any prosecution witness under the guidelines set forth in *Giglio v United States* (405 US 150 [1972])" (*see* Point Seven, Footnote 5, of the People's Memorandum of Law).

3

information is recorded in tangible form and irrespective of whether the prosecutor credits the information."

Pursuant to CPL § 245.20 (1) (l), the People must also disclose "a summary of all promises, rewards and inducements made to, or in favor of, persons who may be called as witnesses, as well as requests for consideration by persons who may be called as witnesses and copies of all documents relevant to a promise, reward or inducement."

To the extent that such evidence and information is known but has not yet been disclosed, the People are directed to do so expeditiously. Further, should the People ascertain the existence of *Brady, Geaslen or Giglio* material, or of any of the materials and information itemized in CPL § 245.20 (1) (e), (k) and (l), through their mandated diligent, good faith effort to do so or otherwise, they are directed to expeditiously disclose the same upon its receipt. If such material or information does exist and is disclosed belatedly, or did exist and is now missing or destroyed, this Court will determine the appropriate remedy or sanction to be imposed under the circumstances (*see* CPL § 245.80).

Accordingly, as the People have presumably satisfied the requirements of CPL § 245.20 (1) (k), (l), and (p), and the cases cited above, Defendant's request for exculpatory material is denied as moot.


## 2. MOTION FOR PRECLUSION OF DEFENDANT'S PRIOR CRIMES OR BAD ACTS; ASSOCIATED *SANDOVAL* AND *VENTIMIGLIA* HEARINGS.

Relying on *People v Sandoval*, 34 NY2d 371 [1974], and *People v Ventimiglia*, 52 NY2d 350 [1981], Defendant moves for a pre-trial hearing "to determine the admissibility at trial for any purpose of any and all alleged criminal convictions and/or criminal, vicious or immoral acts of defendant" (*see* Points B and C, Pages 3-4, of Defendant's Notice of Motion, and Pages 1-2 of Defendant's Memorandum of Law). Defendant further moves for the Court to direct the People to provide "all specific instances of defendant's alleged prior uncharged criminal, vicious or immoral conduct of which the prosecution has knowledge, and which the District Attorney intends to use at trial" (*see* Point C, Page 4, of Defendant's Notice of Motion).

In response, the People consent to *Sandoval* and *Ventimiglia* hearings (*see* Point Five, Pages 15-16, of the People's Memorandum of Law). Further, the People have provided a list of

4

defendant's criminal convictions, "which the prosecution intends to use at trial for purposes of impeaching defendant's credibility and/or as substantive proof of any material issue in the case," which include his 2014 conviction of Attempted Criminal Possession of a Weapon in the Second Degree and 2019 conviction of Criminal Trespass in the Third Degree (*Id.* at Pages 15-16). The People also indicate that should they "seek to introduce defendant's prior bad acts on their direct case [pursuant to *People v Molineux*, 168 NY 264 [1901]], the People will inform defense counsel and the Court and request a hearing before introducing such *Molineux* evidence" (*Id.*).

Accordingly, as the People have complied with their discovery obligations under CPL § 245.20 (3), Defendant's request for a *Sandoval* and *Ventimiglia* hearing is granted on consent, and it will be conducted immediately prior to trial.

**3. MOTION FOR INSPECTION OF THE GRAND JURY MINUTES AND DISMISSAL OR REDUCTION OF THE CHARGES CONTAINED IN INDICTMENT NUMBER 70543-23 DUE TO THE LEGAL INSUFFICIENCY OF THE EVIDENCE PRESENTED AND THE INSTRUCTIONS PROVIDED.**

Defendant moves for inspection of the Grand Jury minutes and for dismissal of the indictment based upon the "lack of legally sufficient evidence before the said Grand Jury to support those counts or [reduction] of the charges in those counts to offenses actually supported by the evidence" (*see* Point D, Pages 4-5, of Defendant's Notice of Motion, and Page 2 of Defendant's Memorandum of Law). Specifically, Defendant alleges that the requisite intent was not shown to support the instant charges (*see* Page 3 of Defendant's Memorandum of Law). Defendant further requests "that this Court inspect the Grand Jury minutes to determine if the Grand Jury was properly instructed" (*see* Page 3 of Defendant's Memorandum of Law). Defendant alleges that the defense of justification should have been charged as "[t]he video in this matter depicts the complainant as the initial aggressor and shows him jump out of a car and aggressively charge toward Mr. Peterson" (*Id.* at Page 4). Defendant further alleges that "[a]t a different location, a knife was later [re]covered by police from the sidewalk where the complainant Mr. Browning was receiving medical attention" (*Id.*).

In their response, the People consent to an in-camera inspection of the Grand Jury minutes by the Court (*see* Point One, Page 1, of the People's Memorandum of Law), contend that the indictment is supported by legally sufficient evidence (*Id.*), and assert that "Defendant has failed

5

to meet his…high burden of showing the existence of any error in the grand jury proceeding which rendered it defective" (*Id.* at Page 3). With respect to Defendant's argument regarding intent, the People contend that the testimony presented to the Grand Jury "establishes that what started as a verbal altercation between the victim and defendant transformed into a physical fight…[with] the victim [suffering] a single stab wound to the heart," and therefore, "[w]hen viewed in the light most favorable to the People, that defendant intended to cause the death of and serious physical injury to the victim by stabbing him" (*Id.* at Pages 2-3). Further, the People contend that there was no basis upon which they should have charged the defense of justification as "the grand jury did not hear any testimony nor did it see any physical evidence that would have supported" such a charge (*Id.* at Page 6).

The Court has conducted an in-camera review of the entirety of the Grand Jury proceeding, having examined the unredacted certified copies of the stenographic transcripts of the February 15 and 22, 2023 presentations and the February 24, 2023 instructions on the law, along with copies of the Grand Jury exhibits that were received in evidence.

On February 15, 2023, prior to the commencement of the given sworn testimony, the People specifically inquired of and confirmed with the foreperson that twenty (20) grand jurors were present. The record established that a quorum of sixteen (16) grand jurors were present throughout the three-day presentation of the case and that those grand jurors deliberated and voted on the charges contained in Indictment Number 70543-23.

"Courts assessing the sufficiency of the evidence before a grand jury must evaluate 'whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted – and deferring all questions as to the weight or quality of the evidence – would warrant conviction'" (*People v Mills*, 1 NY3d 269, 274-275 [2003], quoting *People v Carroll,* 93 NY2d 564, 568 [1999]; *see People v Edwards*, 36 NY3d 946, 947 [2020]; *People v Deleon*, 34 NY3d 965, 966 [2019]; *People v Bello*, 92 NY2d 523, 525 [1998]; *People v Booker*, 164 AD3d 819, 820 [2d Dept 2018]; *People v Pino*, 162 AD3d 910, 910-911 [2d Dept 2018]; *People v Hulsen*, 150 AD3d 1261, 1262 [2d Dept 2017], *lv. denied* 30 NY3d 950 [2017]; *People v Flowers*, 138 AD3d 1138, 1139 [2d Dept 2016]). Legally sufficient evidence is "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL § 70.10 (1); *see People v Deleon*, 34 NY3d at 966; *People v Mills,* 1 NY3d at 274; *People v Booker*,

6

164 AD3d at 820; *People v Pino*, 162 AD3d at 911; *People v Arcila*, 152 AD3d 783, 784 [2d Dept 2017], *lv. denied* 30 NY3d 978 [2017]; *People v Hulsen*, 150 AD3d at 1262; *People v Franov*, 146 AD3d 978, 979 [2d Dept 2017]). "In the context of a Grand Jury proceeding, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" (*People v Gaworecki*, 37 NY3d 225, 230 [2021], quoting *People v Grant*, 17 NY3d 613, 616 [2011]; *see People v Mills*, 1 NY3d at 274; *People v Bello*, 92 NY2d at 526; *see People v Holloway*, 210 AD3d 1007, 1008 [2d Dept 2022]; *People v Castro*, 202 AD3d 815, 816 [2d Dept 2022]; *People v Booker*, 164 AD3d at 820). This Court's inquiry is "limited to 'whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes,' and whether 'the Grand Jury could rationally have drawn the guilty inference'" (*People v Bello*, 92 NY2d at 526, quoting *People v Deegan*, 69 NY2d 976, 979 [1987]; *see People v Castro*, 202 AD3d at 816; *People v Booker*, 164 AD3d at 821; *People v Pino*, 162 AD3d at 911; *People v Arcila*, 152 AD3d at 784).

Here, the evidence presented to the Grand Jury, when viewed in the light most favorable to the People, was legally sufficient to establish and support the charges contained in Indictment Number 70543-23.

A Grand Jury proceeding is "defective," warranting dismissal of the indictment, only where the "proceeding . . . fails to conform to the requirements of CPL Article 190 to such degree that the integrity thereof is impaired and prejudice to the defendant may result" (CPL § 210.35 (5); *see People v Jimenez*, 39 NY3d 74 [2022]; *People v Palma*, 208 AD3d 801, 802 [2d Dept 2022]; *People v Sealy*, 181 AD3d 893, 894 [2d Dept 2020], *lv. denied* 35 NY3d 1070 [2020]; *People v Arevalo*, 172 AD3d 891, 892 [2d Dept 2019]; *People v Williams*, 171 AD3d 804, 805 [2d Dept 2019]). "'The exceptional remedy of dismissal of an indictment is warranted only where prosecutorial misconduct, fraudulent conduct or errors created a possibility of prejudice" (*People v Palma*, 208 AD3d at 802, quoting *People v Addimando*, 197 AD3d 106, 121 [2d Dept 2021]; *see People v Huston*, 88 NY2d 400, 409 [1996]; *People v Sealy*, 181 AD3d at 894; *People v Williams*, 171 AD3d at 805; *People v Burch*, 108 AD3d 679, 680 [2d Dept 2013], *lv. denied* 22 NY3d 1087 [2014]; *People v Thompson*, 81 AD3d 670, 671 [2d Dept 2011], *aff'd* 22 NY3d 687 [2014]). Here, the Court finds that no such misconduct, conduct or errors occurred and Defendant's argument that the People's failure to provide a justification charge to the Grand Jury necessitates dismissal of the indictment is without merit.

While "the People maintain broad discretion in presenting their case to the grand jury and need not...present all of their evidence tending to exculpate the accused" (*People v Mitchell*, 82 NY2d 509, 515 [1993], citing *People v Lancaster*, 69 NY2d 20, 25–26 [1986], *cert. denied* 480 US 922 [1987]; *see People v Moses*, 197 AD3d 951, 952-953 [4th Dept 2021], *lv. denied* 37 NY3d 1097 [2021]; *People v Morel*, 131 AD3d 855, 859-860 [1st Dept 2015], *lv. denied* 26 NY3d 1147 [2016]; *People v Goldston*, 126 AD3d 1175, 1177 [3d Dept 2015], *lv. denied* 25 NY3d 1201 [2015]; *People v Pickens*, 60 AD3d 699, 703 [2d Dept 2009], *lv. denied* 12 NY3d 928 [2009]), "a prosecutor should instruct the Grand Jury on any complete defense supported by the evidence which has the potential for eliminating a needless or unfounded prosecution" (*People v Grant*, 113 AD3d 875, 876 [2d Dept 2014], quoting *People v Wilson*, 228 AD2d 708, 709 [2d Dept 1996]; *see People v Jimenez*, 189 AD3d 882, 884 [2d Dept 2020]; *People v Tunit*, 149 AD3d 1110, 1111 [2d Dept 2017]). If the prosecutor fails to do so, the proceeding is defective, mandating dismissal of the indictment (*People v Ball*, 175 AD3d 987, 988-989 [4th Dept 2019], *affd* 35 NY3d 1009 [2020]; *see People v Mitchell*, 82 NY2d 509, 514-515 [1993]; *People v Lancaster*, 69 NY2d at 27; *People v Valles*, 62 NY2d 36, 38-39 [1984]; *People v Tunit*, 149 AD3d at 1111; *People v Samuels*, 12 AD3d 695, 698 [2d Dept 2004]). In determining whether the evidence supports such a defense, the record must be viewed in the light most favorable to the defendant (*see People v Enoksen*, 175 AD3d 624, 625 [2d Dept 2019], *lv. denied* 34 NY3d 1016 [2019]; *People v LaRoche*, 162 AD3d 684, 685 [2d Dept 2018]; *People v Tunit*, 149 AD3d at 1111; *People v Samuels*, 12 AD3d at 698), however dismissal of the indictment is warranted only "when the defense is supported by a reasonable view of the evidence" (*People v Jimenez*, 189 AD3d at 884; *see People v Forde*, 140 AD3d 1085, 1087 [2d Dept 2016], *lv. denied* 28 NY3d 929 [2016]; *People v Torres*, 252 AD2d 60, 65 [1st Dept 1999], *lv. denied* 93 NY2d 1028 [1999]; *People v Hosein*, 221 AD2d 563, 563 [2d Dept 1995]) and not just a "mere allegation" from a defendant (*People v Mitchell*, 82 NY2d at 514-515; *see People v Edwards*, 32 AD3d 281, 282 [1st Dept 2006], *lv. denied* 7 NY3d 901 [2006]; *People v Brunson*, 226 AD2d 1093, 1094 [4th Dept 1996], *lv. dismissed* 88 NY2d 981 [1996]; *People v Flores*, 219 AD2d 40, 45-46 [1st Dept 1996]).

Viewing the grand jury evidence in the light most favorable to Defendant in the case at bar, this Court finds that there was no reasonable view of such evidence to support a justification charge.

8

"With respect to the defense of justification under Penal Law § 35.15 (2) (a), 'a defendant is justified in using deadly physical force upon another only if that defendant reasonably believes that such other person is using or about to use deadly physical force'" (*People v Swanton*, 188 NYS3d 333, 335 [4th Dept 2023], quoting *People v Brown*, 33 NY3d 316, 320 [2019]; *see People v Anderson*, 36 NY3d 1109, 1110 [2021]; *People v Agosto*, 203 AD3d 841, 842 [2d Dept 2022], *lv. denied* 38 NY3d 1068 [2022]; *People v Singh*, 197 AD3d 1332, 1335 [2d Dept 2021]). "The Penal Law defines 'deadly physical force' as 'physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury'" (*People v Vega*, 33 NY3d 1002, 1004 [2019], quoting Penal Law § 10.00 [11]; *see People v Lugg*, 124 AD3d 679, 679-680 [2d Dept 2015], *lv. denied* 25 NY3d 990 [2015]; *People v Bradley*, 297 AD2d 640, 641 [2d Dept 2002], *lv. denied* 99 NY2d 556 [2002]), and "deadly physical force 'encompasses not merely the striking of the first blow or infliction of the first wound,' but also 'acts by a person that cause the defendant reasonably to believe that the defendant is facing the imminent threat of deadly force'" (*People v Swanton*, 188 NYS3d at 335-236, quoting *People v Brown*, 33 NY3d at 322; *see People v Valentin*, 29 NY3d 57, 60 [2017]).

"However, the Penal Law further provides that, for purposes of the defense of justification under Penal Law § 35.15 (2) (a), 'a defendant is never justified in using deadly physical force if that defendant is the initial aggressor,' i.e., 'the first person in an altercation who uses or threatens the imminent use of deadly physical force'" (*People v Swanton*, 188 NYS3d at 336, quoting *People v Brown*, 33 NY3d at 320; *see* PL § 35.15 [1] [b]; *People v Petty*, 7 NY3d 277, 285 [2006]; *People v Irizarry*, 200 AD3d 428, 429 [1st Dept 2021], *lv. denied* 37 NY3d 1161 [2022]; *People v Addison*, 184 AD3d 1099, 1100 [4th Dept 2020], *lv. denied* 35 NY3d 1092 [2020]). "'If mere physical force is employed against a defendant, and the defendant responds by employing deadly physical force, the term initial aggressor is properly defined as the first person in the encounter to use deadly physical force,'" thereby rendering the defense of justification inapplicable (*People v Swanton*, 188 NYS3d at 336, quoting *People v Brown*, 33 NY3d at 321; *see People v Irizarry*, 200 AD3d at 429; *People v Smith*, 195 AD3d 1416, 1417 [4th Dept 2021]; *People v McWilliams*, 48 AD3d 1266, 1267 [4th Dept 2008], *lv. denied* 10 NY3d 961 [2008]).

Here, the videos (Grand Jury Exhibits 1 (a) and 1 (b)) that were received in evidence fail to support Defendant's position that the victim was the initial aggressor. Grand Jury Exhibit 1 (a), which is the 83 Riverdale Avenue surveillance video, captures the physical altercation between

9

the defendant and the victim. While the video shows the victim exit his father's vehicle and charge at the defendant, during the ensuing physical altercation, Defendant became the initial aggressor when he employed deadly physical force by stabbing the victim. Further, although Defendant alleges that a knife was recovered by the police from the sidewalk where the victim was receiving medical attention, the video footage in evidence does not show the victim brandishing or in possession of a knife or dangerous instrument at the time of the stabbing. Accordingly, while the victim appears to be the initiator of physical force, Defendant was the first person in the encounter to use deadly physical force, i.e., the initial aggressor, thereby rendering the defense of justification inapplicable.

Moreover, unlike the defendant in *People v Samuels*, 12 AD3d 695 [2d Dept 2004], who provided testimonial evidence before the Grand Jury supporting her justification defense, the Grand Jury in this case did not hear any testimony that would have supported a charge on justification. Not only were there no witnesses with direct knowledge of the incident who testified in support of Defendant's contention, but the defendant himself, who clearly had such knowledge of the incident and of any circumstances that might have warranted such instructions, chose not to exercise his right to testify before the Grand Jury (*see People v Mitchell*, 82 NY2d at 515, citing *People v Lancaster*, 69 NY2d at 26; *People v Morel*, 131 AD3d at 860).

Thus, there was no reasonable view of the evidence presented in the Grand Jury warranting an instruction on justification and the integrity of the Grand Jury was not impaired by the People's failure to so instruct.

Further, while a prosecutor is required to instruct the grand jury on the law with respect to matters before it (*People v Valles*, 62 NY2d 36, 38 [1984]; *People v Tunit*, 149 AD3d 1110, 1110 [2d Dept 2017]; *People v Samuels*, 12 AD3d 695, 698 [2d Dept 2004]; *see* CPL § 190.25 (6)), "a Grand Jury need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law" (*People v Calbud, Inc.*, 49 NY2d at 394; *see People v Caracciola*, 78 NY2d 1021, 1022 [1991]; *People v Batashure*, 75 NY2d 306, 311 [1990]; *People v Goetz*, 68 NY2d 96, 115 [1986]; *People v Valles* 62 NY2d 36, 38 [1984]; *People v Tunit*, 149 AD3d at 1110; *People v Castaldo*, 146 AD3d 797, 798 [2d Dept 2017]; *People v Burch*, 108 AD3d at 680; *People v Malan-Pomaeyna*, 72 AD3d 988 [2d Dept 2010]). It is well settled that such instructions are sufficient so long as they provide "enough information to enable [the grand jury] intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient

10

evidence to establish the material elements of the crime" (*People v Calbud, Inc.,* 49 NY2d at 394-395; *see People v Valles* 62 NY2d at 38; *People v Tunit,* 149 AD3d at 1110-1111; *People v Patterson,* 73 AD3d 1215, 1215 [2d Dept 2010], *lv. denied* 15 NY3d 776 [2010]; *People v Malan-Pomaeyna,* 72 AD3d at 988).

Here, after an in-camera review of the unredacted certified copies of the stenographic transcripts of the Grand Jury presentation on February 15 and 22, 2023, and the instructions on the law on February 24, 2023, this Court determines that the Grand Jury proceeding was not defective and that the instructions given during the presentation were legally sufficient and proper.

Accordingly, for the reasons set forth above, Defendant's motion to dismiss or reduce the charges contained within Indictment Number 70543-23 is denied.

## 4. MOTION TO SUPPRESS PHYSICAL EVIDENCE.

Citing CPL Article 710, the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and Article 1, Section 12, of the New York State Constitution, Defendant moves to suppress "all physical evidence including, but not limited to, the property seized from Mr. Peterson's person and apartment, and any DNA purportedly discovered on said property," on the ground that "[s]uch materials were obtained without authority of a legal and proper judicial warrant supported by probable cause, and the search for and seizure of such property was unreasonable" (*see* Point E, Page 5, of Defendant's Notice of Motion, and Page 7 of Defendant's Memorandum of Law). In the alternative, Defendant seeks a "*Mapp/Dunaway* hearing" (*Id.*).

In response, the People "consent to a *Mapp/Dunaway* hearing limited to the issue of the physical evidence recovered from defendant's person at the time of his arrest" (*see* Point Four, Page 13, of the People's Memorandum of Law). However, regarding the items recovered from Defendant's apartment, the People "do not consent to a pre-trial hearing," as they contend that such items "were recovered pursuant to a lawfully obtained and executed search warrant" (*Id.*).

Here, while Defendant was provided with copies of the search warrant affidavit and the order executed at his apartment through the People's Discovery Portal (*see* Item "n" of the Discovery Disclosure Index), he has failed to move to controvert the search warrant and "'make the requisite substantial preliminary showing that the warrant [ ] [was] based upon [an affidavit] containing statements that were knowingly or intentionally false or made with reckless disregard for the truth'" (*People v Baker,* 205 AD3d 815, 817 [2d Dept 2022], *lv. denied* 38 NY3d 1186

11

[2022], quoting *People v Watson*, 163 AD3d 855, 857 [2d Dept 2018], *lv. denied* 32 NY3d 1009 [2018]; *see Franks v Delaware*, 438 U.S. 154, 155-156 [1978]; *People v Williams*, 208 AD3d 1263, 1265 [2d Dept 2022], *lv. denied* 39 NY3d 965 [2022]; *People v Lassiter*, 151 AD3d 885, 866 [2d Dept 2017], *lv. denied* 30 NY3d 951 [2017]; *People v Moshier*, 110 AD3d 832, 833 [2d Dept 2013], *lv. denied* 22 NY3d 1042 [2013]),[5] and, consequently, he is not entitled to a hearing (*see People v Blackwood*, 66 Misc.3d 1231 (A), 2019 NY Slip Op 52168 (U) [Sup Ct, Kings County, 2019]; *see People v Cusumano*, 108 AD2d 752 [2d Dept 1985]). Therefore, any physical evidence recovered pursuant thereto is not subject to suppression.[6]

Accordingly, Defendant's motion for suppression of physical evidence is granted on consent to the extent that hearings pursuant to *Mapp v Ohio*, 367 US 643 [1961], and *Dunaway v New York*, 442 US 200 [1979], will be conducted to determine the legality and admissibility of any evidence seized/recovered outside the purview of the search warrant.

## 5. MOTION TO SUPPRESS STATEMENTS.

Citing CPL Article 710, the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and CPL § 60.45, Defendant requests that the Court suppress "the statements noticed to the defense and all fruits of such statements, since such statements were the product of an unlawful arrest and made in violation of the right to counsel" (*see* Point F, Page 5, of Defendant's Notice of Motion, and Page 6 of Defendant's Memorandum of Law). In the alternative, Defendant seeks a "*Huntley/Dunaway* hearing" (*Id.*).

In response, the People "consent to a *Huntley* hearing" (*see* Point Two, Page 8, of the People's Memorandum of Law).

Based upon the People's consent, Defendant's motion to suppress statements is granted to the extent that a hearing pursuant to *People v Huntley*, 15 NY2d 72 [1965], and *Dunaway v New*

---

[5] The only allegations made by Defendant are that "[u]pon information and belief, when Mr. Peterson was detained by the Yonkers Police Department...property was recovered from his person and residence without a valid warrant" and that "[t[he police had no reasonable suspicion or probable cause to conduct a search of Mr. Peterson's...residence" (*see* Page 7 of Defendant's Memorandum of Law).

[6] Per the People, pursuant to the search warrant executed at Defendant's apartment, the police "recovered several items, including but not limited to: a grey/green jacket, a green sweatshirt, a grey book bag, and a white [shopping] bag with a red handle" (*see* Point Four, Page 13, of the People's Memorandum of Law).

*York*, 442 US 200 [1979], will be conducted to determine the voluntariness and admissibility of the noticed statements.

## 6. MOTION TO SUPPRESS IDENTIFICATION TESTIMONY.

Citing CPL Article 710, Defendant moves to suppress the identifications of Defendant "on the grounds that the identification procedures employed were unduly suggestive" (*see* Point G, Pages 5-6, of Defendant's Notice of Motion, and Page 6 of Defendant's Memorandum of Law). In the alternative, Defendant seeks "a *Wade/Dunaway* hearing" (*Id.*).

In response, the People contend that "Defendant's motion to suppress identification evidence should be denied following a hearing pursuant to *United States v Wade*, 338 US 218 [1967]," and should be "limited to the issue of the suggestiveness of the photo array procedure" (*see* Point Three, Page 9, of the People's Memorandum of Law). With respect to the alleged video surveillance identification of the defendant, the People contend it does not constitute an identification procedure within the meaning of CPL § 710.30 (*Id.* at Page 11). Specifically, the People contend that given the officer's prior familiarity with the defendant, the officer's identification was impervious to suggestion (*Id.*).

As the People have impliedly consented to a hearing pursuant to *United States v Wade*, 388 US 218 [1967], Defendant's motion to suppress is granted to the extent that a *Wade* and *Dunaway* hearing will be held in connection with the photo array identification. As the People contend that the officer was so familiar with Defendant to negate any possibility of suggestiveness (*see* Point Three, Page 11, of the People's Memorandum of Law), the Court will also conduct a hearing pursuant to *People v Rodriguez*, 79 NY2d 445, 454 [1992], in connection with the video identification. If the People fail to make the required showing of sufficient familiarity, a *Wade* hearing will be held to determine whether the procedure utilized with the video identification was unduly suggestive.

## 7. RESERVATION OF RIGHT TO MAKE ADDITIONAL PRE-TRIAL MOTIONS.

Defendant's request to make additional pre-trial motions (*see* Page H, Page 6, of Defendant's Notice of Motion) is granted to the extent that, if sought, he will be required to serve

13

and file an Order to Show Cause detailing the reason(s) why said motions were not brought in conformity with the time provisions and motions practice set forth in CPL § 255.20 (1) and (2), respectively.

However, notwithstanding the provisions of CPL § 255.20 (1) and (2), this Court will "entertain and decide on its merits, at any time before the end of the trial, any appropriate pre-trial motion based upon grounds of which the defendant could not, with due diligence, have been previously aware, or which, for other good cause, could not reasonably have been raised within the period specified in [CPL § 255.20 (1)] or included within the single set of motion papers as required by [CPL § 255.20 (2)]" (CPL § 255.20 (3); *see People v Wisdom*, 23 NY3d 970, 972 [2014]; *People v Marte*, 197 AD3d 411, 413 [1st Dept 2021]; *People v Burke*, 174 AD3d 915, 915 [2d Dept 2019]; *People v Milman*, 164 AD3d 609, 610 [2d Dept 2018]).

The foregoing constitutes the Decision and Order of this Court.

Dated:  White Plains, New York
        June 15, 2023

HONORABLE ROBERT J. PRISCO
County Court Judge

14

[* 14]

To:   HON. MIRIAM E. ROCAH
Westchester County District Attorney
111 Dr. Martin Luther King Jr. Blvd.
White Plains, New York 10601
Attn: Assistant District Attorney Elizabeth H. Shumejda

THE LEGAL AID SOCIETY OF
WESTCHESTER COUNTY
Attorney for Defendant Timothy Peterson
150 Grand Street-Suite 100
White Plains, New York 10601
Attn: Christine Asch, Esq.

15